(No. 18948.—)

Fred W. Bladel, Admr., Appellee, vs. Mabel Carroll, Appellant.

*Opinion filed June 19, 1929—Rehearing denied October 4, 1929.*

Dietz, J., took no part.

James W. Maucker, and Kenworthy, Dietz, Shallberg, Harper & Sinnett, for appellant.

Marshall & Marshall, and William B. Schroder, for appellee.

Per CURIAM: Appellee, Fred W. Bladel, as administrator of the estate of his deceased wife, Mary Bladel, and in his own person, filed his bill in the circuit court of Rock Island county against appellant, Mabel Carroll, for the specific performance of a written contract for the sale of certain real estate in the city of Rock Island. The cause was referred to a master to take the evidence and report his conclusions. The master recommended a decree as prayed, objections to his report were overruled, a decree was entered as rcommended, and an appeal has been prosecuted to this court.

Mary C. Hetter died testate December 24, 1924, leaving to her daughters, Mary Bladel and Mabel Carroll, who were her only heirs-at-law and who were named as executrices, the real estate in question, which consisted of two houses on one lot. The will made five bequests of $100 each. It was admitted to probate and the estate was in the course of administration. Appellant was married and had children. Mrs. Bladel was married to appellee, a mail carrier in Rock Island, but they had no children. On August 4, 1925, the sisters entered into a written contract in which appellant agreed to purchase from Mrs. Bladel her half interest in the real estate for $4000. The agreement provided that it was entered into with the understanding that a merchantable abstract of title was to be furnished and the conveyance was to be by a warranty deed, both parties paying one-half of the expense of the transfer. A few days later appellant applied to the Central Trust and Savings Bank of Rock Island for a loan of $4000 on the property, which was granted. The abstract of title was examined by the attorney for the bank, who reported that Mrs. Bladel could not convey a good title because the estate of her mother had not been settled and the year for filing claims would not expire until January 29, 1926. Before the bank would make the loan it required an indemni-

fying bond in double the amount of the loan, which bond would cost about $80. Neither party was willing to pay this amount and the sale was not completed at that time. There were several subsequent conversations between the sisters. On Sunday, August, 23, 1925, Mrs. Bladel and her husband started on an automobile trip. She was killed the next day in an accident. On October 16, 1925, appellee filed a petition for letters of administration on his wife's estate, in which he alleged that she died seized of a half interest in the estate of her mother, Mary C. Hetter, together with certain personal estate estimated to be worth about $1000. He executed a bond of $2000 and filed an inventory, in which he listed a half interest in the real estate in question and the personal estate belonging to his wife. On October 21, 1925, appellee and appellant had a conference in the office of an attorney in which appellee requested that the contract be carried out according to its terms. Appellant refused to comply but she offered to pay $2000 for a deed from appellee. On February 5, 1926, another conversation took place, at which appellee demanded $4000 without interest, and appellant refused to pay. On March 5, 1926, appellee filed an amended inventory in his wife's estate, which showed that her interest in the real estate in question had become personal property because of the written contract with appellant, and on the same day appellee filed a new bond for $10,000 pursuant to the amended inventory. On March 30, 1926, with two witnesses, appellee called at the home of appellant, made a demand for $4000 and tendered an abstract of title and deed. The deed was dated March 29, 1926, and was signed by appellee as administrator and as an individual. On the following day this bill was filed.

Appellant contends that after it was ascertained that a conveyance could not be made until the Hetter estate had been settled the contract of sale was abandoned by appellant and her sister. By the terms of the contract no spe-

cific time was fixed for its completion ánd time was not made of its essence. This being true, the law would imply that it was to be performed within a reasonable time, and what would be a reasonable time would be a matter of proof under all the circumstances and conditions which surrounded the particular case. (*Ullsperger* v. *Meyer,* 217 Ill. 262.) It is evident from the acts and sayings of each party that they construed the contract as meaning that it was to be carried out within a very few days. This having been found to be impossible, it is undisputed that a new arrangement was made by the parties with reference to the contract, each party having introduced evidence to that effect. Appellee introduced evidence tending to show that the execution of the contract was to be, by agreement of the parties, postponed until the expiration of the time for filing claims against the estate of Mary C. Hetter, deceased, which would be January 29, 1926. Appellee introduced evidence to the effect that when Mrs. Bladel's inability to carry out the contract in accordance with the expectation of the parties was discovered, appellant said "she would get the money from an uncle, and if she couldn't get the money from an uncle she would let the matter drag until the time to close the estate," and that Mrs. Bladel heard that statement but made no reply. Even if this statement was made and Mrs. Bladel made no reply this would not constitute an extension of the time for the performance of the contract, for the reason that a contract between two parties cannot be based upon a statement of one party to which the other party does not give assent. That Mrs. Bladel did not give her consent to this arrangement is evidenced by the fact that in his bill with reference to this matter appellee alleges, "and the said Mabel Carroll thereupon decided to procure the loan from some individual or to carry out the terms of the contract on or about the 29th day of January, 1926, being the time of the expiration of the year for filing claims against the estate of her

mother, Mary C. Hetter, deceased." The bill alleges "that pursuant to said agreement Mabel Carroll took possession of said premises by moving into one of the houses on the said above described premises on or about August 15, 1925, and by collecting the rents, issues and profits of the other house on the above named property." Appellant on August 22, 1925, moved into one of the houses on the premises. The undisputable evidence is that she did not take possession of the premises "pursuant to said agreement" or as the equitable owner of the fee but she went into possession thereof as a tenant. This fact is evidenced by a receipt dated May 22, 1925, signed by Mrs. Bladel for the payment by appellant to her of her half of one month's rent from August 22 to September 22, 1925. On that same date Mrs. Bladel received one-half of the month's rent in advance paid by the tenant of the other house.

Appellant called as witnesses her daughter, Mary Carroll Strode, and her son-in-law, Charles Kenneth Strode. The latter testified to two conversations between appellant and Mrs. Bladel, the latter occurring on August 22, and the former, which Strode fixed as "two or three days before Maude was killed," "about August 20, 1925," and "the night before they moved." Mrs. Bladel's name was Mary, but she was commonly called Maude. Strode testified that in the first of these conversations Mrs. Bladel said, "As you can't get the money and we are going on this trip, we will call the deal off until the time will come when you can get the money;" that then there was a conversation about appellant moving down to the house on Eighth avenue and paying rent; that they agreed upon the amount of rent which she should pay, and the amount of rent was fixed at $35 a month; that at the second conversation appellant said that Mrs. Lundberg had given them the rent and they would have to give her a receipt for it; that she wrote out her own receipt for her half and Maude wrote out her receipt; that these were sent over to Mrs. Lund-

berg; that appellant then gave Maude $17.50 for her own
rent, and Maude sat down at the table and wrote her a re-
ceipt for $17.50 on a piece of wrapping paper, which re-
ceipt was introduced in evidence; that after she wrote the
receipt Maude rose from the table and said, "Beings you
are paying rent to me now, Mabel, we will call off this
agreement; maybe after the year's up we can settle it like
friends;" that Mary Carroll, then unmarried, was present
at both conversations. Mary Carroll testified that on the
evening of August 21, 1925, Mrs. Bladel came to their home
and said to her mother that they might as well move and
pay rent and call the contract off, because she wasn't going
to pay any money for the bond; that she was going to
hold on to her share and that appellant should pay rent at
the rate of $35 a month; that then they agreed upon the
payment of $35 per month rent; that Mrs. Bladel then said,
"Since you are going to pay me rent we might as well call
the contract off because it is not settled; you can't get the
money and you don't have a share in it until you give me
the money; we will call it off;" that her mother said it
was all right with her. In rebuttal appellee called five wit-
nesses who testified that on the Friday before Mrs. Bladel
was killed, appellee and Mrs. Bladel were at a meeting
of the local chapter of the Association of Letter Carriers, -
about three miles from the business district of Rock Island,
during the time of the evening which had been fixed by
appellant's witnesses as the time of the first conversation.
While it might well be that any or all of these witnesses
testifying to occurrences on August 21, 1925, two years
prior to the giving of their testimony, might easily be hon-
estly mistaken in their recollection of the exact date on
which the occurrences occurred, circumstances in evidence
show conclusively that about that time the relations of the
parties with reference to the premises became changed.
The evidence shows conclusively that on August 22 appel-
lant moved into a house on the premises as a tenant and

that on that date an interview took place between the sisters, at which time Mrs. Bladel's share of the rent was paid to her. It is scarcely conceivable that appellant moved into the premises and paid her rent in advance .without a previous interview between the sisters having taken place at which a tenancy was agreed upon and the amount of the rent fixed. There is nothing inherently improbable in the testimony given by appellant's witnesses. The sisters were on terms of friendly intimacy, and under the circumstances it was the natural arrangement that the deal should be called off,—*i. e.,* the contract for sale abandoned, with the understanding that a new contract should be entered into at a future time. After this time appellant never recognized the contract. Appellee testified that at the interview of October 21, 1925, appellant did not recognize the contract at all. He stated that the contract had been altered. He did not then claim that the contract was to be executed after the expiration of the year, but tried to get appellant to then pay him for the interest which he had in his wife's property under the law, which was read to them by the attorney at that time. When he filed in the county court his sworn inventory as executor of his wife's last will and testament he did not consider that the contract of sale was outstanding and valid. He listed the property as real estate and made no mention of a contract for sale. He did not list in the inventory any claim against appellant, as trustee of the purchase money for his wife. He did not give a bond to cover the claim for the purchase money as an asset of the estate. His conduct at that time is entirely inconsistent with his present claim that the contract was then a valid and existing contract, but it is entirely consistent with the theory that he then knew that the contract in question had been abandoned by mutual consent of the parties.

We are of the opinion that the great weight of the evidence is in favor of appellant's contention that the contract

for purchase which appellee seeks to have specifically performed had been abandoned by mutual consent of the parties thereto during the lifetime of Mrs. Bladel.

Under the evidence in this case appellee was not entitled to a decree of specific performance of the contract in question.

The decree of the circuit court is reversed and the cause remanded to that court, with instructions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*

Mr. JUSTICE DIETZ took no part in this decision.