Helen F. Theesfeld, Plaintiff-Appellant, v.
William D. Eilers, Defendant-Appellee.

Gen. No. 69–82.

Third District.

April 7, 1970.

John Unger, Unger & Stewart, of Danville, for appellant.

Thomas C. Stifler, II, Stifler & Snyder, of Danville, for appellee.

RYAN, J.

This is a personal injury action with verdict and judgment for defendant. Plaintiff has appealed.

On May 11, 1966, at about 7:00 p. m., plaintiff was driving her vehicle in an easterly direction on Illinois Route #1, just south of Watseka, Illinois. Plaintiff testified that she was in the process of making a left turn into a shopping center when the vehicle which she was driving was struck in the rear by a vehicle being driven by the defendant. Plaintiff stated that her turn signal was on and that she had to stop and wait for an oncoming car. Defendant testified that it was dark, sort of foggy and raining; that he was also driving in an easterly direction along the same road at a speed of about 35 miles per hour immediately before the accident; that he saw no taillights or brake lights ahead of him; that the reflection of his headlights on the plaintiff's license plate called his attention to the fact that an accident might occur; that he applied his brakes and his car slid into the rear of the plaintiff's car at a speed of about 15 miles per hour. An investigating state trooper testified that it was dark and raining and "there would have been no tire burns because the tires would have slid." The trooper also stated that there were no roadway signs indicating any entrance to the shopping center. Plaintiff testified that defendant admitted his fault after the accident, but this was denied by the defendant.

Following the accident, plaintiff did her shopping and drove home. She first noticed a sore, stiff neck a couple

100

of days after the accident. She doesn't remember any mark, scar or bruises on her forehead immediately after the accident. She stated that she had headaches and trouble remembering after the accident. She consulted her family doctor and was then referred to Drs. Dorothy and Donald Schultz. Dr. Donald Schultz, who limits his practice to the field of neurosurgery, subsequently performed brain surgery on the plaintiff on July 1, 1966, removing a part of the temporal lobe of the brain. Dr. Schultz testified that he removed a portion of a gliotic mass and that he believed that the condition resulted from the auto accident.

Dr. Eric Oldberg, a neurological surgeon, testified on behalf of the defendant after having examined the plaintiff and inspected the hospital records. He expressed the opinion that the accident didn't produce any condition of ill-being; that he couldn't rationalize the treatment given the plaintiff; that gliosis is an increase in the connective tissues of the brain; in other words, a scar, and to develop to the extent indicated by the records furnished him would require six months to a year— which would have indicated that the cause thereof would have antedated the accident in question.

Two of plaintiff's consulting doctors, namely, Dr. Bobowski, a pathologist, and Dr. Eisen, a psychologist, were called as defendant's witnesses. Dr. Bobowski's testimony tended to confirm Dr. Oldberg's testimony. Dr. Eisen's testimony tended to refute the plaintiff's testimony as to lack or loss of memory.

Plaintiff-appellant raises several points on appeal. Was it error for the trial court to refuse to direct a verdict for the plaintiff on the question of liability? Was it error for the trial court to refuse a new trial on the grounds that the verdict was contrary to the manifest weight of the evidence? Was it error to allow the testimony of Dr. Oldberg to stand when it was based

in part on hospital records made by those not under his control or supervision? Was Dr. Oldberg's testimony objectionable because it was not limited to objective findings? Was it error for the trial court to give defendant's instruction on contributory negligence; to refuse to give plaintiff's instructions on following too closely and reckless driving; and to refuse plaintiff's special interrogatory to the jury on reckless driving?

We do not believe that the trial court erred in refusing to direct a verdict for the plaintiff on the question of liability. Neither do we believe that the verdict was contrary to the manifest weight of the evidence.

■ It is a fact that the defendant ran into the plaintiff's car. Under the special facts of this occurrence, however, it cannot be said that inferences could not be drawn that the defendant was free from negligence. Although plaintiff testified that her turn signals were on, the defendant testified that he saw no lights and was not aware of the presence of plaintiff's car in front of him until his headlights reflected off her rear license plate. In order to sustain plaintiff's motion for a directed verdict, the trial judge and this court would have to determine that after considering all of the evidence in its aspect most favorable to the defendant that no contrary verdict could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. Such a determination cannot be made in this case.

■ ■ It is the jury's function to determine the facts, disputed as well as undisputed, and to make reasonable inferences therefrom. Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717. The jury's determination of factual questions may not be set aside on review because a judge believes a different conclusion more reasonable. Such action becomes proper only when the verdict is contrary to the manifest weight of the evi-

dence. Guthrie v. Van Hyfte, 36 Ill2d 252, 222 NE2d 492. The record discloses ample evidence to support the jury's finding. It is therefore immaterial that the court might draw a contrary inference. Allendorf v. Elgin, J. & E. Ry. Co., 8 Ill2d 164, 171, 133 NE2d 288.

In Finley v. New York Cent. R. Co., 19 Ill2d 428, 436, 167 NE2d 212, it was stated as follows:

> "The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts. Its conclusion, whether relating to negligence, causation, or any other factual matter should not be set aside merely because different conclusions could be drawn or because judges feel that other results are more reasonable."

█ Applying the above rules to the special facts of the case at hand, we find that the trial court committed no error in denying plaintiff's motion for a directed verdict on the question of liability, or in denying plaintiff's motion for a new trial on the grounds that the verdict was contrary to the manifest weight of the evidence.

█ It may even be that the jury in this case, in arriving at its decision, found that the defendant was negligent and that the plaintiff was free from contributory negligence. We have no way of knowing that. Under the facts of this case, however, the jury could still have found for the defendant on the basis that the plaintiff was not injured or that her injury was not proximately caused by the accident in question. We have already reviewed the evidence in that regard and need not repeat it here. Suffice it to say that the issue was

raised by the facts and could have been decided either way by the jury. There can be no recovery for negligent conduct when there is a failure to prove causal connection between the injury and the event at issue. Manion v. Brant Oil Co., 85 Ill App2d 129, 229 NE2d 171; Carter v. Winter, 50 Ill App2d 467, 200 NE2d 528; Wigington v. Faulkner, 51 Ill App2d 220, 201 NE2d 252. Illinois Pattern Instruction No. 21.02, which was given in this case, relates to the burden of proof on the issues. In addition to requiring the plaintff to prove that she was using ordinary care for her own safety and that the defendant was negligent as charged, this instruction also requires that the plaintiff prove that she was injured and that the negligence of the defendant was a proximate cause of the injury. This instruction also instructs the jury that if any of these propositions has not been proved, then the verdict should be for the defendant. Under this instruction, if the plaintiff failed to sustain the burden of proving that she was injured or that her injury was proximately caused by the negligence of the defendant, a verdict for the defendant is required even though the plaintiff may have sustained the burden of proving the defendant negligent as charged and that she, herself, was in the exercise of ordinary care. The evidence in this case is such that all four of said propositions, i. e., negligence, contributory negligence, injury and proximate cause were issues of fact for the determination of the jury. Contributory negligence will be discussed later in this opinion.

 As to the testimony of Dr. Oldberg which is objected to, we find no error. Although Dr. Oldberg considered the plaintiff's hospital records in arriving at his diagnosis, these records had been received in evidence in this case as part of the plaintiff's case in chief. Plaintiff, accordingly, has no standing to object to their consideration by Dr. Oldberg in testifying for the de-

104

fendant. The objection which the plaintiff made to Dr. Oldberg's use of the records relating to the plaintiff's case was that these records were "subjective" and, therefore, the doctor could not consider those, since he was not a treating physician. We do not perceive the question to be one of objective or subjective symptoms. The records concerning the plaintiff which the doctor had previously examined and which were used in part, at least, in the formation of his opinion which was expressed in court, were records which the plaintiff, herself, had offered into evidence and which had been admitted into evidence. At the time that Dr. Oldberg testified, these records were in evidence. An expert witness may base his opinion upon facts which are in evidence or partly on facts of his own personal knowledge, and partly on facts shown by the testimony of others. He should not base his opinion on facts that are not proved. 32 CJS, Evidence, § 546(94); Melford v. Gaus and Brown Const. Co., Inc., 17 Ill App2d 497, 151 NE2d 128; Butler v. Palm, 36 Ill App2d 351, 184 NE2d 633.

 ▆▆▆ Dr. Oldberg also testified that he made an examination of the plaintiff and from this examination found that she was oriented and knew where she was and why. An objection was made to the effect that orientation is a subjective finding and that since Dr. Oldberg examined the plaintiff solely for the purpose of testifying and not for the purpose of treating the plaintiff, he should not be allowed to state such an opinion. The objection was overruled and the plaintiff here has assigned this ruling as error. We do not deem it necessary to enter into a detailed discussion of the difference between subjective and objective symptoms. We deem it sufficient to state that in this case the doctor testified that he made an examination of this lady and from his examination he found that she was oriented. He had previously been asked on direct ex-

105

amination as to what she had told him about what happened to her. The objection to that question was sustained. There is nothing in the abstract to indicate that the doctor's conclusion that she was oriented was based on any statement that she made to him, or any other subjective symptom.

 The plaintiff has assigned as error the giving by the court of an instruction concerning contributory negligence. Although the plaintiff's automobile was struck from the rear and although she testified that her turn signals were on, the defendant had testified that he saw neither taillights nor brake lights and that his first knowledge of the presence of the plaintiff's vehicle stopped on the highway was when his headlights reflected off her license plates. We are of the opinion that this raises a jury question as to whether either the taillights or the brake lights or the turn signals on the plaintiff's automobile were on, operating and visible to the defendant. It was a dark night and was raining. We feel that these facts raise possible questions as to the contributory negligence of the plaintiff so as to authorize the giving of the instruction in question.

 The court refused to give plaintiff's instructions on following too close and reckless driving and refused plaintiff's special interrogatory to the jury on reckless driving. There being no evidence in this case to the effect that defendant was following another vehicle more closely than was reasonable and prudent or that the defendant was guilty of willful and wanton misconduct or reckless driving, the refusal of plaintiff's instructions on these points was proper. Moreover, willful and wanton misconduct was not pleaded in plaintiff's complaint.

 Plaintiff's special interrogatory to the jury as to reckless driving was properly refused for the same reason and correspondingly because it was not directed

at an ultimate issue in the case, and therefore was not proper. Debolt v. Wallace, 56 Ill App2d 380, 206 NE2d 469. Interrogatories which ask for a special finding as to mere evidentiary facts are never proper. Wicks v. Cuneo-Henneberry Co., 319 Ill 344, 150 NE 276.

For the reasons given, we believe that the judgment of the trial court in this case should be and the same is hereby affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.