SINCERO PESCAGLIA *et al.*, Plaintiffs-Appellants, *v.* ORFEO GIANESSI *et al.*, Defendants-Appellees.

(No. 72-93;

Third District—February 4, 1973.

Ronald L. Keyser, of Pekin, for appellants.

Carl F. Reardon, of Pekin, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs-Appellants, Sincero Pascaglia and Burgess Childress, brought this action in the Circuit Court of Tazewell County against Defendants-Appellees, Orfeo Gianessi and Lena Gianessi, seeking specific performance of a real-estate contract for the sale of property located near North Pekin, Illinois. After hearing the court determined that plaintiffs were not entitled to specific performance of the·contract, dismissed the complaint for want of equity and this appeal follows.

On April 6, 1970, defendant requested his attorney, Harold J. Rust, to prepare a contract for the sale of real property located in North Pekin, Illinois, to plaintiff, Pescaglia. On April 16, 1970, the contract so prepared was signed by the parties. Pescaglia at that time gave defendant a check for $1,000, as a "good faith payment".

The agreement contemplated the sale of 106.50 acres of land at $117,150. The agreement further contemplated that plaintiff intended to use part of this property for a trailer court and was to petition the Village of North Pekin for the necessary annexation and rezoning in furtherance of that plan.

The principal source of this controversy are Paragraphs 4, 5 and 6 of the contract. In substance Paragraph 4 of the contract provides for annexation of the premises to the Village of North Pekin, Tazewell County, Illinois, and, Paragraph 5 provides for the rezoning of said premises by the appropriate agency of the Village of North Pekin to permit the construction of a residential development and the construction of a trailer park. Paragraph 6 provides:

> "At the time said annexation and rezoning have been completed, party of the second part agrees to pay parties of the first part an additional sum of $10,000 on the principal of this contract; provided, however, that if said annexation and rezoning have not been completed within —— days after the execution of this agreement, then party of the second part may declare this agreement null and void, and thereupon, parties of the first part shall return said down payment of $1,000.00 to party of the second part."

The blank appearing before the word "days" in the preceding provision was not filled in either by the draftsmen of the document or by the parties at the time of execution.

Plaintiff Pescaglia proceeded immediately to petition the Village of North Pekin, defendants joining in such petition, for annexation and rezoning of the property involved. On May 25, 1970, plaintiff asked the North Pekin Village Board to delay proceedings on the petitions.

On February 8, 1971, plaintiff sent a letter to defendant stating that although the zoning had not been accomplished, the plaintiff was waiv-

ing that provision of the agreement, as was his option, and was enclosing a certified check for $10,000 in accordance with the agreement. Defendant held the check until March 11, 1971, at which time it was mailed back to plaintiff.

This action was commenced in June, 1971, and the plaintiff sought to require the defendant seller to specifically perform his obligations under the contract. Judgment of the trial court was in favor of the defendant.

In seeking to reverse the action of the trial court plaintiff argues generally that the evidence is insufficient to defeat his right to require specific performance of the contract. In particular the plaintiff argues, one; the contract was written by defendant's attorney and for that reason any ambiguity should, as a matter of law, be construed against defendant. Two; the time at which tender was made was not unreasonable in light of the evidence. Three; any increase in value of the real property involved does not defeat plaintiff's right to specific performance and four, there has been no forfeiture of the contract in accordance with its express terms.

In support of the actions of the trial court and in opposition to the contentions of the appellant, defendant argues generally that the right to specific performance is not absolute, but rests in the sound discretion of the court. According to established principles of equity, and in the light of all the facts and circumstances of this case, the court did not abuse its discretion in refusing to grant plaintiff's request for specific performance. In particular defendant argues, one; a plaintiff who later abandons, rescinds, breaches or otherwise terminates a contract and who fails to proceed with diligence, may not thereafter secure its specific performance. Two; under the circumstances of this case the matter of whose attorney may have prepared the contract is immaterial and three; the forfeiture provisions of the contract were inapplicable.

■■ The initial controversy between the parties arises from the application of Paragraph 6 of the contract. The time for compliance with this provision was left blank. The reasons for and the consequences of the failure of the written instrument to specify a date for performance constitute a significant portion of the testimony and are interrelated with the principal issue of the case namely whether plaintiff did or did not perform as required by the contract. It should be noted that plaintiff argues on this appeal that the evidence conclusively establishes his right to specific performance. Whether a contract has been performed according to its terms is ordinarily an issue of fact. However plaintiff argues that due performance is established as a conclusive fact because ambiguities, frailties and inadequacies of the contract must be construed against the defendant and additionally the failure of the defendant to serve a for-

feiture notice demonstrates that the contract was still in force at the time performance was tendered by plaintiff.

■■ Plaintiff has argued that because the final draft of the contract was prepared by Rust as attorney for the defendant, ambiguities in the instrument should be construed most strongly against the defendant. (*Berman Leasing Co. v. Chicago Terminal Clearance,* 88 Ill.App.2d 43, 232 N.E.2d 180, and *City of Chicago v. Carpenter,* 95 Ill.App.2d 81, 238 N.E. 2d 70.) As observed in *Donahue v. Rockford Showcase & Fixture Co.,* 87 Ill.App.2d 47, 232 N.E.2d 278, "The contract will be construed most strongly against the party who prepared it for the reason that he chose the words to be used and is therefor more responsible for the existence of ambiguity."

■■ In applying the general rule previously described, the circumstances create a substantial doubt that within the rules' rationale the contract was in fact drafted by defendant's attorney. A preliminary draft of the proposed agreement was prepared by Childress, one of the plaintiffs. Childress was a wholesale lumber dealer associated with Pescaglia in the development of the tract as a trailer park. The original draft proposals submitted by Childress were prepared either by him or another attorney. The original proposals were submitted by Rust who thereafter discussed the proposed contract with both Gianessi and Pescaglia. Rust was Gianessi's attorney and had been so for several years. Rust's partner in the practice of law, Dunkelberg, was Pescaglia's attorney but it does not appear that Dunkelberg participated in drafting the agreement. The provisions included in the final draft of the contract executed by the parties were admittedly prepared by Rust so far as mechanical execution thereof is concerned. The testimony fails to show which of the provisions were proposed and authored by Rust in contrast to those authored and proposed in the draft tendered by Childress. It can hardly be said that leaving a blank space for the period of performance to be inserted is an ambiguity at all and in any event it is not an ambiguity that can be charged against the draftsmen of the agreement. So far as the testimony of the parties is concerned it appears that neither at the time of preliminary conversations nor at the time of execution of the contract document was there any agreement specifically determining the period referred to in paragraph 6. Defendant in his testimony asserted that the intended period was 60 to 90 days, a fact which was disputed by plaintiff. Where the contract does not specify the time of performance, a reasonable time ordinarily will be implied. (*I.L.P., Ch. 3, Vendor & Purchaser, Sec. 42* and *Bladel v. Carroll,* 336 Ill. 168, 167 N.E. 790.) The foregoing rule is of particular significance in this case because it may be inferred from the testimony the parties desired that the plaintiff have a reasonable time

to perform but did not appear aware that the issue had not been resolved. Gianessi testified a "quick" deal was discussed and intended, meaning from 60 to 90 days. Plaintiff on the other hand testified that a period of six months to a year could be the time involved in annexing and rezoning property for a trailer park. As will be seen later there were other aspects of the conduct of the parties after the agreement was executed which could have been considered by the trial court of more significance in determining the reasonableness of the time of performance than the testimony of the parties as to what was and was not said at the time of the execution of the agreement. We do believe however that the failure of the contract to include a time of performance is not an ambiguity which in any degree enhances plaintiff's rights in this action. That the blank was left in the instrument was as much the responsibility of the plaintiff as that of the defendant.

■■ This brings us to the principle issue of the case. Since this is an equitable action the plaintiff is not only required to show the existence of a duty cognizable in equity but must also show, where such duty is based on the contract, that he has exercised good faith and appropriate diligence in performing the obligations required of him.

Arguing that the contract contemplated that plaintiff secure annexation of the property to a municipality or waive such requirement within a reasonable period of time, plaintiff claims that his waiver of the annexation requirement and tender of the $10,000 payment in February, 1971, represented reasonable performance of the contract on his part. However in this regard we believe the evidence is conflicting and in our opinion a contrary conclusion is supported by ample evidence.

From the language of the contract document and the testimony of the parties it was intended that the plaintiff seek annexation of the property to the Village of North Pekin. Plaintiff had prior conversations with North Pekin Village officials and had received assurances that the property would be annexed to the Village and rezoned in accord with the plaintiff's expectations. After the execution of the agreement the proposals for annexation and rezoning were incorporated in proposed ordinances and were to have been presented at the Village Board meeting on May 25, 1970. Both Pescaglia and Gianessi were present at the Board meeting but shortly before the ordinances were to be presented plaintiff Pescaglia requested that no action be taken and it appears undisputed from the record that plaintiff did not at any time thereafter make any effort to secure action by the North Pekin Village Board. At this juncture plaintiff explains his action by asserting that the agreement contemplated annexation to and rezoning by a municipality that could supply adequate sanitary facilities, that North Pekin could not do so and consequently an-

nexation to North Pekin would serve no useful purpose. Furthermore according to plaintiff, defendant Gianessi was at the meeting, knew that he had discontinued efforts to annex the property to the Village of North Pekin and therefore must be deemed to have concurred in plaintiff's discontinuance of efforts to secure annexation to North Pekin. With respect to this issue it appears that the plaintiff is proposing a construction of the contract not included in any of its provisions, or, assent and approval of plaintiff's conduct which is contradicted by the testimony of the defendant.

Contrary to plaintiff's assertion that annexation to a village able to supply sanitary sewage services was contemplated is the evidence that there was no change in North Pekin's situation from that prevailing at the time the agreement was entered into until the time the plaintiff discontinued his efforts at annexation. Up until the Board hearing at which plaintiff was present both the plaintiff and the Village of North Pekin were agreeable to annexation and rezoning even though the sewage service could not then be provided. Plaintiff in his own testimony concedes that after May 25, 1970, he discontinued efforts to annex the property to North Pekin and furthermore plaintiff did not purport to waive the annexation requirement until February, 1971.

There is testimony concerning conversations between the parties in July, September, October and November, 1970, but even the substance of these conversations is vague and in conflict. The most that can be said of the conversations is that plaintiff may have asked for and been given some time to try and sell the property. However the plaintiff sought to enforce the contract of April 16, 1970, and not some subsequent contract. Such conversations offer additional support for defendant's position that the plaintiff had abandoned any efforts to have the premises annexed to and rezoned by the Village of North Pekin and yet declined to waive the requirement by tendering the payment required.

■■ Plaintiff has argued that the failure of the defendant to give or file notice of forfeiture as required by Paragraph 20 of the contract conclusively shows that defendant considered the contract to be in full force and effect and hence his rejection of the tendered $10,000 payment in February was wrongful. This argument may be disposed of by reference to the contract itself. Paragraph 7 provides:

> "In the event that said annexation and rezoning are completed as above provided, said additional payment of $10,000.00 shall be made by party of the second part to parties of the first part, and the parties hereto then agree to the further performance of this contract as hereinafter set forth."

It can be seen that the provisions following Paragraph 7 of the contract

including Paragraph 20, the forfeiture clause, become applicable only after the $10,000 payment is made. Plaintiff did not receive possession of the tract at the time the agreement was signed and consequently the forfeiture which dealt principally with return of possession and re-entry was not of any particular application.

■■ Finally plaintiff argues that the increase in value of the premises should not be a bar to his right to require specific performance by the seller. We agree with this assertion but do not agree that the increase in value was given such effect by the trial court. Increases or decreases in the value of property may have some bearing in understanding the motives of parties and may be considered by the trial court for that purpose. In the instant case the trial court might well have inferred that the increase in value of the premises shortly before the tender of the $10,000 payment was made helped explain plaintiff's conduct after plaintiff terminated his efforts at annexation of the tract to the Village of North Pekin.

■■ In summary it is our conclusion that whether plaintiff performed his obligations under the contract with due diligence presented a factual issue and that there is ample evidence to support the resolution of this issue by the trial court in favor of the defendant.

For the foregoing reasons the judgment of the Circuit Court of Tazewell County is affirmed.

Judgment affirmed.

DIXON and SCOTT, JJ., concur.