FIRST CAPITOL MORTGAGE CORPORATION, Plaintiff-Appellant, *v.* TALANDIS CONSTRUCTION CORPORATION, Defendant-Appellee.

First District (2nd Division) No. 58657

Opinion filed March 29, 1977.—Rehearing denied April 19, 1977.

JIGANTI, J., dissenting.

John Bernard Cashion and Paul F. Davidson, of Chicago, for appellant.

Morgan, Lanoff, Cook & Madigan, of Chicago (John A. Cook, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, First Capitol Mortgage Corporation, filed this suit against defendant, Talandis Construction Corporation, seeking a declaratory judgment and payment of a 1% brokerage fee pursuant to their written contract. Following a bench trial, the trial court entered judgment in favor of plaintiff and against defendant in the amount prayed, $19,403. Thereafter, pursuant to motion by defendant, the trial court vacated the judgment in favor of plaintiff and entered judgment in favor of defendant. When plaintiff's motion to vacate the judgment in favor of defendant and to reinstate the prior judgment in favor of plaintiff was denied, this appeal was perfected.

On appeal, defendant-appellee appeared but neglected to file a brief, although it had been given ample opportunity to do so. Without addressing the merits of the controversy, we reversed *pro forma* the order of the trial court due to defendant's failure to file a brief, and the cause was remanded to the circuit court with directions to reinstate the prior judgment in favor of plaintiff. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1975), 28 Ill. App. 3d 684, 329 N.E.2d 412.

On appeal to the supreme court, the court noted that a uniform practice had not developed in Illinois for the disposition of an appeal in a case where the appellee failed to file a brief. After distinguishing the situation in which a court of review could properly dismiss an appeal upon the appellant's failure to file a brief, the supreme court held:

> "However, the judgment of a trial court should not be reversed *pro forma* for the appellee's failure to file its brief as required by rule. A considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal." (63 Ill. 2d 128, 131, 345 N.E.2d 494.)

Consequently, the case was remanded to this court, and we will now consider the merits of the appeal. To assist us in our review of the issues raised herein and the applicable authorities, appellee has now filed a brief.

In seeking a reversal of the vacation order entered by the trial court and a remandment of the cause with directions to reinstate the prior judgment in favor of plaintiff, plaintiff presents three issues: (1) whether the findings of the trial court were against the manifest weight of the evidence when the court vacated the judgment it originally entered in favor

of plaintiff and entered judgment in favor of defendant; (2) whether the terms of a written "Procurement Agreement" entered into by the parties require that a fee by paid to plaintiff by defendant; and (3) whether the principle of either ratification or waiver should operate to render a fee payable to plaintiff.

Plaintiff filed its complaint on June 7, 1971, and alleged therein that it was engaged as an agent of defendant in April of 1968 for the purpose of negotiating and procuring a loan for the construction of a multiple unit apartment complex. The legal document entered into by the parties whereby this purported agency was created and defined provides in pertinent part as follows:

### "PROCUREMENT AGREEMENT

THIS AGREEMENT made and entered into this 9 day of April, 1968, by and between FIRST CAPITOL MORTGAGE CO., INC., hereinafter referred to as FIRST CAPITOL; and TALANDIS CONSTRUCTION CORPORATION, an Illinois corporation, hereinafter referred to as TALANDIS,

### WITNESSETH:

That in consideration of the mutual promises herein set forth, the parties agree as follows:

1. That TALANDIS does hereby appoint FIRST CAPITOL as exclusive agent for a period of sixty (60) days after TALANDIS supplies specified exhibits, to negotiate and procure a loan in the amount One Million Four Hundred Forty Thousand ($1,440,000.00) Dollars for a period of twenty (20) years at interest not to exceed Seven (7%) Per Cent with the right to refuse any unsatisfactory commitment. No unreasonable delays will be made in pay outs. Said loan is to be used for an apartment complex and shall be secured by a note and mortgage on the following described real-estate:

[legal description of real estate]

2. That TALANDIS agrees to pay FIRST CAPITOL, a fee of One (1%) per cent of said loan for its services of acting as TALANDIS' agent in negotiating and procuring said loan, which amount shall be due and payable at the office of FIRST CAPITOL out of the first disbursement of said loan.

3. In the event that TALANDIS does not accept the loan commitment furnished by FIRST CAPITOL, TALANDIS shall not be obligated to FIRST CAPITOL for any payments due under this agreement. However, TALANDIS agrees to pay FIRST CAPITOL the One (1%) per cent fee in the event TALANDIS, subsequent to this agreement, obtains said loan from the source

furnished by FIRST CAPITOL at any time within one year from the date of this agreement."

In an attempt to establish its right to the fee described in the procurement agreement, plaintiff alleged in its complaint that as a direct result of services performed by it, a loan commitment in the amount of $1,940,300 was issued on March 4, 1969, by the Department of Housing and Urban Development of the Federal Housing Administration (hereinafter referred to as the "FHA") covering the expenses of defendant's planned project; that pursuant to this commitment, defendant secured a mortgage in the amount of $1,940,300 through Dovenmuehle, Inc. (hereinafter referred to as "Dovenmuehle"), and constructed said project; and that even though plaintiff performed its services in compliance with the procurement agreement, defendant refused to pay any fee whatsoever to plaintiff. Plaintiff prayed for judgment in the amount of $19,430 as payment of its fee pursuant to the terms of the contract and for an adjudication of the respective rights of the parties.

By its answer to plaintiff's complaint, defendant disputed plaintiff's characterization of the action taken by FHA. Defendant asserted that FHA issued a "commitment to insure a loan," not a loan commitment as alleged by plaintiff and as required by the procurement agreement. Furthermore, defendant denied that plaintiff procured on defendant's behalf either a loan commitment or a commitment to insure a loan, and consequently, no fee was owing to plaintiff under the provisions of the contract.

Defendant also advanced four affirmative defenses to plaintiff's complaint. First, defendant alleged that the contract terminated 60 days after its creation due to plaintiff's failure to satisfy the provisions contained in paragraph 1 of the contract. In accordance with defendant's interpretation of the contract, plaintiff was required to procure a loan commitment for defendant within "* * * sixty (60) days after [defendant] supplies specified exhibits * * *." Only after the fulfillment of this condition precedent to the applicability of paragraph 3 of the contract could plaintiff earn a fee subsequent to the expiration of the initial 60-day period. Second, defendant alleged by way of defense that it entered into the procurement agreement solely upon the fraudulent representation of plaintiff that plaintiff could obtain a substantial loan commitment for defendant within a short period of time. This representation prompted defendant to accept the terms of the procurement agreement since defendant desired to commence the project as soon as possible in order to minimize escalating construction costs. The final two affirmative defenses advanced by defendant

pertained to plaintiff's status as an Indiana corporation and its standing to commence this lawsuit. Defendant asserted that plaintiff was unauthorized to conduct business in Illinois and that plaintiff was not in existence as a corporation at the time of filing its complaint.

After entertaining arguments of counsel pertaining to the third and fourth affirmative defenses, the trial court declined to dismiss the case on these grounds. Without further elaboration on the pretrial proceedings in this cause, suffice it to say that this matter was adjudicated at a bench trial commencing on June 21, 1972. Following the testimony of three witnesses, the introduction of numerous exhibits, and the arguments of counsel, the court entered judgment in favor of plaintiff for the full amount of the commission payable pursuant to the terms of the procurement agreement.

Some two months subsequent to the entry of judgment, the trial court entertained defendant's motion to vacate the judgment. After hearing arguments of counsel, the court allowed defendant's motion, setting aside the judgment previously entered in favor of plaintiff and entering judgment in favor of defendant. However, since a court reporter was not present at that proceeding, the arguments advanced by counsel and the findings of the court on that date are not contained in the record.

On October 30, 1972, the trial court considered and denied plaintiff's motion to vacate the judgment entered in favor of defendant and to reinstate the prior judgment entered in favor of plaintiff. At this proceeding, reference to the previous hearing was made by the court and by counsel for plaintiff. According to these comments, one of the motivating factors which prompted the court's vacation of the original judgment was that the court determined the procurement agreement did not envision the payment by defendant of a double commission, a situation which would occur if defendant paid a 1% fee to plaintiff after having paid a 2% commission to Dovenmuehle.

In light of our resolution of the issues raised herein, a summation of the evidence adduced at trial is not required. Plaintiff's position at trial, as manifested by its pleadings, the evidence introduced thereon, and the arguments of its counsel, was that pursuant to paragraph 3 of the procurement agreement, plaintiff had one year within which to perform its contractual duties and that a loan commitment was procured by it and accepted by defendant within the one-year period. In support of this position, plaintiff argues that the language of the contract is unambiguous; that, in any event, the language of paragraph 3 is more specific and should thus control other provisions of the contract; that even though several persons collaborated in an effort to obtain financing for defendant, plaintiff was the procuring cause of the mortgage; and that the terms of

the consummated deal need not be identical to the terms contemplated by the procurement agreement, but rather, substantial compliance is satisfactory.

■■ We disagree with plaintiff's characterization that the provisions of the contract are cast in unambiguous language. Specifically, we consider paragraph 1 of that document to be unclear as it relates to the commencement of the 60-day period. Although the contract is dated April 9, 1968, the 60-day duration of the exclusive agency was to commence after defendant "supplies specified exhibits." Not only is the identity of these "exhibits" unspecified in either the contract or any other exhibit of record, but plaintiff conceded at trial that procuring this type of financing often requires that numerous exhibits be furnished to various parties over an indefinite period of time. The only testimony adduced on this point was elicited from Talandis, and he stated that the necessary exhibits were supplied by defendant "immediately" after the procurement agreement was executed.

Moreover, we consider the last sentence of paragraph 3 to be ambiguous and capable of more than one construction. Since the interpretation of paragraph 1 when read in conjunction with paragraph 3 is a threshold consideration in this appeal, and in light of the fact that plaintiff drafted this document, we will construe the language of this contract more strongly against the plaintiff, if necessary, as plaintiff should be held accountable of the ambiguities of its own expression. *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 295 N.E.2d 148.

■■ When read in its entirety, we construe the procurement agreement to provide, in pertinent part, as follows: plaintiff became the exclusive agent of defendant for the purpose of negotiating and procuring a loan on certain specified terms; the duration of the exclusive agency was 60 days beginning when defendant "supplied specified exhibits"; defendant retained the right to reject any "unsatisfactory" loan commitment procured by plaintiff; plaintiff would be entitled to a commission of 1% of the amount of the loan if defendant accepted a loan commitment furnished by plaintiff; and plaintiff would be entitled to the full commission if it presented a loan commitment for defendant's consideration within the initial 60-day period and said commitment was accepted by defendant at any time within one year from the date on which the procurement agreement was executed. Simply stated, plaintiff was allowed 60 days after being supplied with specified exhibits within which to perform its obligations under the terms of the contract. Then, plaintiff would become entitled to the contractual fee if defendant elected to accept at any time within one year from the effective date of the contract the financing arrangement furnished by plaintiff. Thus, contrary to plaintiff's interpretation of paragraph 3, plaintiff did not have one year

within which to perform, but rather, plaintiff was required to perform within 60 days and its right to a commission was then protected for an additional period of approximately 10 months, depending upon when the exhibits were furnished by defendant.

The record indicates that defendant supplied the necessary exhibits immediately after the procurement agreement was entered into by the parties. The 60-day period within which plaintiff was required to procure a loan commitment ran from approximately mid-April to mid-June of 1968. According to the uncontroverted testimony of plaintiff's representative in this matter, plaintiff was unsuccessful in its attempts to secure a conventional mortgage for defendant from three different financial institutions during a period extending from April 9 to July 19, 1968. On July 19, 1968, some 30 days after the initial 60-day period had expired, plaintiff initiated contact with Dovenmuehle through which construction financing was eventually procured for defendant. This loan commitment, which was supported by insurance of the Federal Housing Administration, was accepted by defendant and utilized by defendant in the construction of an apartment complex. Even though the terms of the loan were substantially different from the terms specified in the procurement agreement, plaintiff maintains that it is entitled to a 1% commission since a firm commitment to provide these funds was issued within one year from the date of the contract.

■■ Due to our construction of the contract, plaintiff's claim for relief ex contractu must fail. The record clearly indicates, and plaintiff does not dispute, that no negotiations nor other contact was made by plaintiff within the requisite 60-day period with the eventual source of the loan. Hence, the contract terminated by its terms before any efforts were instituted by plaintiff concerning the financing arrangement which was accepted by defendant.

On appeal, plaintiff argues that defendant, by its conduct, waived any variance of the terms between the mortgage procured and the loan contemplated by the procurement agreement, and that defendant ratified the acts of plaintiff in procuring this loan. However, plaintiff neither alleged facts in its complaint so as to justify recovery on either of these two theories, nor did plaintiff amend its pleadings to embrace these principles. Furthermore, no evidence was adduced by plaintiff supporting either theory, nor was the applicability of these legal principles argued before the trial court.

It is well settled that the theory upon which a case is litigated in the trial court cannot be changed on appeal. (*In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 131 N.E.2d 487.) The rationale underlying this rule of procedure is that to hold otherwise would give rise to situations of unfair surprise and the opposition would be deprived of the right to present

mitigating or contradictory evidence on the newly advanced theories. (*Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910, 284 N.E.2d 406.) Accordingly, we will not address plaintiff's contentions regarding these theories.[1]

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

DOWNING, P. J., concurs.

Mr. JUSTICE JIGANTI, dissenting:

I agree substantially with the majority's analyses of the contract and the facts, up to the point where the majority considers the issue of variance which is raised by the plaintiff on appeal and to which defendant has not replied. The majority says that plaintiff has neither alleged facts in its complaint to justify recovery on its theory of waiver, nor did it amend its pleadings to encompass these principles, nor was evidence adduced at trial by the plaintiff supporting that theory. With these contentions I disagree.

The complaint alleges full performance of the conditions of the contract precedent to its right to a brokerage fee. Plaintiff alleges that it was employed by the defendant as the agent of Talandis Construction Corporation in negotiating and procuring a loan for the construction of a specified apartment complex; that the defendant agreed to pay the plaintiff a one percent commission provided said loan was obtained from a source furnished by the plaintiff within one year; that within one year the loan commitment was obtained as a result of the plaintiff's efforts; and the apartment project was constructed. Section 33(3) of the Civil Practice Act requires that pleadings shall be liberally construed (Ill. Rev. Stat. 1971, ch. 110, par. 33(3)) and section 42(2) (Ill. Rev. Stat. 1971, ch. 110, par. 42(2)) states that no pleading is bad which contains sufficient information to reasonably inform the opposite party of the nature of the claim or defense. While it is true that a party cannot plead performance without having pleaded such facts, allegations of performance of the contract and acceptance of the services provided render unnecessary an allegation of waiver of performance. *Walsh v. North American Cold Storage Co.* (1913), 260 Ill. 322, 103 N.E. 185.

In my opinion sufficient facts were alleged in the complaint when liberally construed to justify recovery on a theory of waiver.

Evidence of waiver was admitted at trial. Plaintiff introduced the

---

[1] We feel compelled to note that the possibility of recovery *quantum meruit* was mentioned by the trial court, but plaintiff elected to stand on its pleadings rather than to amend its complaint to encompass this theory.

parties. He originally contacted Dovenmuehle seeking a conventional mortgage on July 19, 1968, apparently after the initial 60-day contractual period. He subsequently spoke to officers of Dovenmuehle on several occasions; submitted requested documents as required, including plans for the proposed construction site and project; assisted Talandis in negotiating difficulties regarding the proposed site; flew with Talandis in defendant's plane to Ithaca, New York and Champaign-Urbana, Illinois, to view existing sites and styles of construction similar to the proposed plans of the project; presented to Talandis and attempted to help him complete required FHA documentation; obtained rent comparables from about 10 communities including Highland, Indiana, Dyer, Indiana, Lansing, Illinois, and other similar communities in the area; attended prefeasibility conferences with Talandis and representatives from Dovenmuehle and FHA; and met with the architects of the project.

In addition, at the conclusion of the case in its closing argument, counsel for plaintiff alluded to the issue of waiver by saying:

> "I have supplied the Court with a Memorandum of Law on the issues involved with respect to the brokerage question and basically, the law on the point appears to be that if the broker is the procuring cause of something that happens, that he is then entitled to his commission even if the principal were, for example, to conclude the transaction. And the broker is entitled to his commission even where the transaction as it is finally completed, is different in its terms from that which the broker was originally authorized to negotiate."

I believe there was sufficient evidence and argument adduced at trial to support the theory of waiver.

It is clear that a party to an express contract may waive certain of its provisions which inure to his benefit (*Bartels v. Denler* (1975) 30 Ill. App. 3d 499, 333 N.E.2d 640) and that such waiver may be shown by agreement of the parties, parol evidence, or their course of conduct. (*Dunn v. Hoefer* (1972), 5 Ill. App. 3d 793, 284 N.E.2d 1; *Hill v. Mercury Record Corp.* (1960), 26 Ill. App. 2d 350, 168 N.E.2d 461; *Chicago Sugar Co. v. American Sugar Refining Co.* (7th Cir. 1949), 176 F.2d 1, *cert. denied*, 338 U.S. 948, 94 L. Ed. 584, 70 S. Ct. 486.) One of the parties to a contract cannot by a long course of conduct lead the other party to believe that it will not insist upon a strict performance of a duty imposed by the contract and then without notice insist upon strict performance. *Chicago Sugar Co. v. American Sugar Refining Co.*

In the instant case defendant remained silent while plaintiff sought to procure a loan for it. When it became apparent that the terms of the loan would vary significantly from the terms of the procurement agreement, defendant's silence continued.

"Even silence when it is likely to mislead the other party and induce him to believe that further performance of the contract will be accepted may amount to an election: 'He who is silent when he ought to have spoken, will not be heard to speak when he ought to be silent.' " 5 Williston, Contracts, § 688, at 303 (3d ed. 1961). I consider any defects in the performance rendered by plaintiff as waived by defendant's acceptance and retention of the benefits of these services. (5 Williston, Contracts § 676, at 220, 223 (3d ed. 1961); Restatement of Contracts §§ 296, 297 (1932).) Although plaintiff did not procure a loan of $1,440,000 for 20 years at 7% interest to build a 120-unit complex, it did produce a loan for a larger amount, for a longer term to build a larger complex. Although the interest rate of 7¼% was higher than the specified 7% all the rest of the terms were more favorable to the defendant than called for in the original procurement agreement. It is my opinion that defendant waived any variance in these terms by his conduct and I would reverse.