FRANK G. ELLERMAN, d/b/a Ellerman Development Company, Plaintiff-Appellant, *v.* CLARK PRODUCTS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 77-921

Opinion filed December 18, 1978.

Ronald L. Barnard and Joseph R. Marconi, both of Ronald L. Barnard & Associates, Ltd., of Chicago, for appellant.

Francis D. Morrissey, Robert L. Berner, Jr., John T. Coleman, and George H. Olsen, all of Baker & McKenzie, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This action was brought by Frank G. Ellerman to recover a commission allegedly owed him for finding a buyer for Clark Products, Inc., a corporation (hereinafter referred to as CPI). The complaint was based upon a written contract between Ellerman and CPI in which Ellerman agreed, for a commission, to find a purchaser for CPI. The complaint was later amended to add a second count which alleged a conspiracy to deprive plaintiff of his commission and which added as defendants the purchasers of CPI, Don J. Hindman and D.J.H., Inc. Pursuant to defendants' motion, the trial court granted a directed verdict on count II of the amended complaint. Plaintiff does not appeal from that order. The original contract action proceeded to trial before a jury which rendered a verdict in defendants' favor. The trial court entered judgment on this verdict and plaintiff now appeals from that judgment.

Plaintiff raises the following issues for our consideration: (1) whether the trial court erred in construing the meaning of the contract and thus erred in denying plaintiff's motion for directed verdict; (2) whether the trial court erred in denying plaintiff's motion for directed verdict under the trial court's construction of the contract; (3) whether the trial court erred in refusing to submit to the jury the special interrogatories offered by plaintiff; and (4) whether the trial court incorrectly determined the ultimate purchase price of the business and, thereby miscalculated the amount of commission due plaintiff.

We affirm.

According to the testimony presented at trial, Frank Ellerman solicited Richard Clark, the president of CPI, to retain Ellerman to find a purchaser for CPI, a finished paper products wholesale distributor. On July 12, 1973, Ellerman and CPI entered into a written contract prepared and presented by Ellerman under which Ellerman was engaged as the exclusive agent to find a purchaser for CPI. The relevant terms of that contract provided:

> "Your appointment is exclusive for a period of six (6) months. All negotiations commenced within that time will be deemed to have originated from you. Your fee is earned if we conclude any sale (or

equivalent transaction) with any purchaser who originated with you. If we do not conclude a sale within thirty (30) months, you are not entitled to any fee or reimbursement."

After entering into the contract, Ellerman engaged Frank Mason in the merger and acquisition department of Continental Illinois National Bank & Trust Company (hereinafter referred to as Continental) to act as Ellerman's intermediary. Under that contract, Ellerman promised to share with Continental any fee earned on the sale of CPI. After Ellerman received financial statements from CPI and presented them to Mason, Mason prepared a bulletin which described CPI in detail but which omitted the name of the company. Mason sent this "blind bulletin" and a cover letter to various individuals and companies which he considered to be prospects. Under a cover letter dated September 12, 1973, Mason sent the "blind bulletin" to Mr. Don J. Hindman, at that time the president of Time Industries, Inc. Mason sent a copy of the letter to Ellerman who notified Richard Clark that CPI had been offered to Hindman. Hindman wrote Mason shortly after receiving the "blind bulletin" and indicated that he was not interested. According to Mason's testimony, Mason spoke with Hindman over the telephone several days after receiving Hindman's letter. Mason disclosed the name of the company for sale and Mason and Hindman discussed the reasons why CPI was not a good deal at book value. Mason further testified that from September of 1973 to January of 1975 he did not converse with Ellerman concerning any interest by Hindman or Time Industries in CPI.

Don J. Hindman testified at trial that he could recall no telephone conversation with Mason shortly after he received the "blind bulletin" solicitation during which the name of the company described in the "blind bulletin" was disclosed. In fact, Hindman testified that Mason never told him the name of the company referred to in the "blind bulletin." Hindman indicated that he did confer with Mason over the phone in January of 1975 at which time Hindman told Mason that he had been negotiating with CPI for several months. Hindman stated that he became interested in CPI after discussing that company in September of 1974 with two employees of the Continental Bank named Lewin and Barr. According to Hindman's testimony, from September of 1974 to February of 1975, Hindman conducted negotiations with CPI which culminated in the sale of CPI to D.J.H., Inc., a corporation solely owned by Hindman. Hindman indicated that the negotiations between CPI and Hindman never included any mention of, or participation by, either Ellerman or his intermediary, Mason.

Frank Ellerman testified that numerous times he attempted to telephone Hindman between September 1973 and the end of 1974 but that Hindman never returned the calls. Ellerman also indicated that he

sent a letter to Richard Clark notifying him of Mason's solicitation of Time Industries. Richard Clark testified that he could not recall such a letter.

Ellerman further testified that he sent Hindman a letter dated January 4, 1974. Enclosed in the letter was financial information on CPI. Ellerman testified that he sent the letter after a conversation with Mason during which Mason indicated that Hindman was interested in CPI. Ellerman could not recall on cross-examination whether this conversation occurred in 1973, 1974 or 1975. Hindman testified he never received the January 4, 1974, letter. Moreover, Mason testified that he could not recall having any conversation with Ellerman about actual interest by Hindman in CPI until January 14, 1975.

Ellerman also testified that he mailed letters to CPI dated January 8, 1975, and February 26, 1975, which identified Time Industries as one of the referrals he made through Mason. The January 8 letter, although listing 38 prospective contacts, states in addition:

> "* * * We have done a lot of work on this situation since July 12, 1973 and thought we did an excellent job in finding a buyer for Clark, which had unattractive earnings based on sales and a book of $2 million. We made many referrals and found nobody interested but Sysco. In fact, the only other company interested was Midwest Paper which offered $1.5 million. After Sysco, we decided not to make any more referrals because of the lack of interest.* * *"

Also called by the defendants to testify were Philip Lewin and George Barr, both employees of the Continental Bank who handled the commercial accounts of CPI, Hindman and Time Industries. Barr testified that he learned CPI was for sale in the summer or fall of 1974 and that at no time prior to September of 1974 did he have a conversation with Richard Clark or Don Hindman concerning CPI. However, in September of 1974, Barr talked to Lewin and told him to contact Clark concerning a possible purchase of CPI by Hindman. Barr knew that Hindman had sold a substantial portion of his interest in Time Industries for cash and was in a strong liquid cash position. At no time prior to September of 1974 did Hindman tell Barr that he had an interest in CPI. Prior to September of 1974, Richard Clark never told Barr that he knew Hindman had any interest in CPI.

Lewin testified that he learned through Barr that CPI was for sale. Prior to the institution of the lawsuit, Lewin had never heard of Ellerman, nor at any time prior to the latter part of 1974, did he have any occasion to discuss CPI with Don Hindman or Frank Mason. In late 1974 Lewin had occasion to call Richard Clark. Lewin indicated to Clark that if his business was for sale Hindman might be interested in buying it. Clark was

interested. Lewin indicated that Hindman's finances changed from 1973 to 1974 due to the sale of a substantial amount of stock in Time Industries.

Hindman testified that in September of 1974, George Barr told him that CPI was for sale and that he arranged a meeting with Clark in September of 1974. Both Hindman and Clark testified that they never heard of each other prior to that conversation.

Plaintiff first contends that the trial court erred in construing the contract to give the plaintiff only a six-month period in which to locate a purchaser and thus erred in denying plaintiff's motion for a directed verdict. The resolution of this contention depends upon the interpretation of the following provision of the contract:

> "Your appointment is exclusive for a period of six (6) months. All negotiations commenced within that time will be deemed to have originated from you. Your fee is earned if we conclude any sale (or equivalent transaction) with any purchaser who originated with you. If we do not conclude a sale within thirty (30) months, you are not entitled to any fee or reimbursement."

The trial court interpreted the above provision as giving Ellerman an exclusive right to sell CPI for the first six-month period, but no right to a commission for a sale after the expiration of the exclusive period unless the purchaser had originated with Ellerman during the six-month exclusive period. Plaintiff urges that a sentence-by-sentence examination of the above-quoted language indicates that Ellerman had an exclusive right to sell for the first six months of the listing, followed by an ordinary open listing for the next 24 months. Plaintiff argues that the contract entitled him to a fee for any prospective purchaser found by him after the six-month period who purchased within 30 months of the date of the agreement.

In support of his interpretation of the contract, plaintiff cites numerous cases. We have reviewed these cases and find the contracts involved therein inapposite to the instant contract. In fact, plaintiff, referring to the trial court's interpretation, indicates in his brief that it "seems to be so unusual that there does not appear to be any Illinois case law directly on point." Plaintiff later in his brief concedes that "the precise language chosen in the contract at issue does not appear to have been previously construed." Although we agree that the precise language chosen has not been previously construed, in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1977), 47 Ill. App. 3d 699, 365 N.E.2d 66, we construed a contract with language very similar to the instant language. The agreement in that case provided that Talandis appoint First Capitol as exclusive agent for a period of 60 days to negotiate and procure a loan in the amount of $1,440,000. Talandis agreed

to pay one percent of the amount of the loan as a fee for this service. The last paragraph of the agreement provided that if Talandis did not accept the loan commitment furnished by First Capitol it would not be obligated to pay a commission. The contract concluded with the provision:

> "However, TALANDIS agrees to pay FIRST CAPITOL the One (1%) per cent fee in the event TALANDIS, subsequent to this agreement, obtains said loan from the source furnished by FIRST CAPITOL at any time within one year from the date of this agreement." (47 Ill. App. 3d 699, 701-02, 365 N.E.2d 66, 68.)

We construed the agreement in *Talandis* as follows:

> "Simply stated, plaintiff was allowed 60 days after being supplied with specified exhibits within which to perform its obligations under the terms of the contract. Then, plaintiff would become entitled to the contractual fee if defendant elected to accept at any time within one year from the effective date of the contract the financing arrangement furnished by plaintiff. Thus, contrary to plaintiff's interpretation of paragraph 3, plaintiff did not have one year within which to perform, but rather, plaintiff was required to perform within 60 days and its right to a commission was then protected for an additional period of approximately 10 months, depending upon when the exhibits were furnished by defendant." 47 Ill. App. 3d 699, 704-05, 365 N.E.2d 66, 70.

First Capitol was unsuccessful in obtaining a loan within the 60-day period, but did, within 30 days after the initial 60-day period had expired, initiate contact with a party from whom a loan commitment was secured within one year from the date of the contract. In rejecting First Capitol's argument that it was entitled to a commission, we reasoned:

> "Due to our construction of the contract, plaintiff's claim for relief ex contractu must fail. The record clearly indicates, and plaintiff does not dispute, that no negotiations nor other contact was made by plaintiff within the requisite 60-day period with the eventual source of the loan. Hence, the contract terminated by its terms before any efforts were instituted by plaintiff concerning the financing arrangement which was accepted by defendant." (47 Ill. App. 3d 704, 705, 365 N.E.2d 66, 70.)

The meaning assigned to the agreement in *Talandis* is essentially the same meaning the trial court assigned to the instant provision.

■■ Plaintiff, however, argues that the agreement in *Talandis* is distinguishable from the instant agreement. Plaintiff notes that First Capitol was appointed as "exclusive agent" for a period of two months, and that Ellerman's "appointment [was] exclusive" for a period of six months. Although we realize the above language defining the agencies is different, we fail to see how that fact distinguishes the instant situation

from that in *Talandis.* What is clear in both *Talandis* and the instant case is that each agreement specifically mentioned only an exclusive agency for a set period of time and provided that a commission be paid if a sale was concluded within a certain period of time beyond the length of the exclusive agency and with a source "furnished" or "originated" with the agent. As in *Talandis,* we believe that the last paragraph of the agreement did not extend to three years the period in which plaintiff had to perform and that the negotiations had to be commenced within the six-month exclusive period.

■ Moreover, as recognized by the court in *Talandis,* what is of critical importance to an interpretation of the disputed paragraph is the fact that the instant contract was drafted by the plaintiff. As a result, it will be construed most strongly against the plaintiff where an ambiguity exists. (*Pescaglia v. Giannessi* (1973), 9 Ill. App. 3d 582, 295 N.E.2d 148.) The agreement clearly states that the fee is earned if a sale is concluded with any purchaser who originates with the plaintiff. The agreement defines negotiations commenced within the six-month period as originating from the plaintiff. Although the provision is somewhat confusing because it speaks of first negotiations that originate and then a purchaser who originates, construing this most strongly against the plaintiff, we conclude the first two sentences indicate that the fee is earned if a sale is concluded with a purchaser who commenced negotiations within the six month period. The last sentence of the disputed provision merely adds another prerequisite before the plaintiff can earn his fee, *viz.,* that a sale must be concluded within 30 months. The last sentence is phrased in the negative, and does not state, as plaintiff would have us believe, "If a sale is concluded within thirty months with a buyer originated from plaintiff, plaintiff is entitled to a fee."

■ Plaintiff next argues that even if the trial court correctly construed the contract, it still erred in denying plaintiff's motion for a directed verdict. We disagree. Directed verdicts should be granted when the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Considering the evidence under the *Pedrick* standard, we believe the trial court properly denied the motion for a directed verdict.

As plaintiff points out, other than the mailing of the "blind bulletin" solicitation to Don Hindman, the evidence is sketchy and conflicting concerning any other acts done by Ellerman or Mason to originate Don Hindman or Time Industries as a purchaser. Although Mason testified that he called Hindman and disclosed CPI's name shortly after Hindman's receipt of the "blind bulletin" solicitation, Hindman could remember no such call. Moreover, Mason went on to testify that at that telephone

conversation Hindman indicated he was not interested in buying the company. Also received into evidence was a letter dated January 4, 1974, from Ellerman to Hindman indicating that Ellerman had learned through Mason that Hindman was interested in CPI. Mason, however, testified that after receiving Hindman's response to the "blind bulletin" indicating that neither Hindman nor Time Industries were interested in any acquisition at that time, he called Hindman in late September of 1973 and Hindman again told him he was not interested in CPI. Mason also testified that he did not speak to Hindman again until January of 1975. Mason also indicated that to his knowledge he never spoke to Ellerman or Hindman between late September of 1973 to January of 1975 regarding CPI. Moreover, Ellerman himself could not recall precisely when he had a conversation with Mason concerning Hindman's expression of interest in CPI. Ellerman indicated it could have been in the year 1973, 1974 or 1975.

Considering the evidence in its light most favorable to the defendants, we believe it very plausible that the jury believed the following scenario as related by Lewin, Barr and Hindman: that Lewin and Barr had business dealings with both Clark and Hindman; that they knew Hindman had cash from the sale of some stock and might be interested in buying CPI; and that they informed Hindman of this fact in late 1974. The jury could have believed that the only contact with Hindman was the "blind bulletin" solicitation and telephone conversation with Mason and that at this point in time Hindman was not interested in any acquisition. Under the terms of the contract, Ellerman was to originate a purchaser, *i.e.*, commence negotiations within his six-month exclusive period. Considering the evidence in its aspect most favorable to the defendant, all Ellerman and his agent did was make contact with Hindman at a time when Hindman was in a position where he could make no acquisitions.

Plaintiff next contends that the trial court erred in refusing to submit his special interrogatory to the jury and in refusing to permit plaintiff to amend that special interrogatory. The special interrogatory tendered by plaintiff and refused by the trial court reads as follows: "Does the jury find that during the period July 12, 1973 and January 12, 1974 Don J. Hindman learned that Clark Products, Inc. was for sale?" Section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65) provides, in pertinent part, that "* * * [the jury] must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. * * *" In other words, the submission of a special interrogatory is mandatory if it goes to a controlling issue. (*Pushauer v. Demers* (1967), 86 Ill. App. 2d 251, 229 N.E.2d 908.) As stated in *Le Flore v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 71, 74, 297 N.E.2d 758, 760:

"However, a special interrogatory is not proper unless it relates to an ultimate fact in the case and unless an answer responsive to it would be inconsistent with some general verdict which might be returned upon the issues in the case. (*Kaspar v. Clinton-Jackson Corp.*, 118 Ill. App. 2d 364[,254 N.E.2d 826]; *Hulke v. International Mfg. Co.*, 14 Ill. App. 2d 5[,142 N.E.2d 717].) A special interrogatory which asks for a finding as to a mere evidentiary fact is never proper. *Theesfeld v. Eilers*, 122 Ill. App. 2d 97[,258 N.E.2d 39]; *Hulke v. International Mfg. Co.*, 14 Ill. App. 2d 5[,142 N.E.2d 717]."

Plaintiff argues that the intent of the instant interrogatory was to elicit from the jury a finding on the critical issue of whether or not Ellerman had originated Hindman as a purchaser within the six-month exclusive period. While we agree that the question of whether Ellerman had originated Hindman as a purchaser within the six-month exclusive period is a controlling issue, we do not believe that the jury's answer to the interrogatory would have been determinative of that issue. An affirmative answer by the jury to the interrogatory would not have resolved the issue of whether Ellerman had originated Hindman as a purchaser. Hindman, for example, could have learned during the six-month exclusive period that CPI was for sale through a business associate or from some source other than Ellerman. The jury's answer to the special interrogatory would not, as plaintiff contends, have resolved the issue of whether Ellerman originated Hindman as a purchaser of Clark Products, Inc. during the six-month exclusive period. The interrogatory asked for a finding on a mere evidentiary fact and was properly refused by the trial court.

■■ Plaintiff also notes that the trial court suggested several amendments to the interrogatory and after defense counsel objected to the interrogatory as amended, the trial court refused the interrogatory in both its unamended and amended forms. The plaintiff raised no objection to the trial court's ruling refusing the interrogatory as amended and has thus waived this question for review. *Rouse v. New York, Chicago, & St. Louis R.R. Co.* (1953), 349 Ill. App. 139, 110 N.E.2d 266.

Plaintiff finally objects to the trial court's determination of the purchase price of the business and commission due plaintiff. In light of the above discussion, we need not reach this question.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and BUCKLEY*, JJ., concur.

---

*Justice Buckley participated in this decision while assigned to the Illinois Appellate Court, First District.