THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RANDY J. LEVENS, Defendant-Appellee.

Second District    No. 2—98—0882

Opinion filed July 16, 1999.

Charles W. Roddick, State's Attorney, of Galena (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph E. Nack, of Nack, Richardson, Kelly & Kurt, of Galena, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

On December 6, 1997, defendant, Randy J. Levens, was charged with driving while driver's license is revoked (625 ILCS 5/6—303(a) (West 1996)) and possessing a firearm without a valid firearm owners' identification card (FOID) (430 ILCS 65/2(a)(1) (West 1996)). After concluding that the traffic stop was improper, the circuit court of Jo Daviess County granted defendant's motion to quash his arrest and suppress evidence. On appeal, the State argues that the arresting conservation officer did not violate section 1.19 of the Wildlife Code (Code) (520 ILCS 5/1.19 (West 1996)) when he briefly detained defendant and requested the production of a valid driver's license and FOID card. We agree and reverse the trial court's order and remand the cause.

Officer Robert VanHamme testified that on December 6, 1997, he observed defendant and defendant's son in a vehicle traveling 10 to 15 miles per hour. Defendant and his son were dressed in blaze orange hunting clothing and both were looking into a field. The officer observed this behavior during shotgun deer season, and he stopped the vehicle in an area that is well known for deer hunting.

Although the officer did not see defendant commit any traffic offenses, the officer stopped the vehicle because he suspected that defendant was violating the Wildlife Code by using a vehicle and the public roadways to hunt (520 ILCS 5/2.31 (West 1996)). During his 23 years of service, the officer had made several traffic stops and arrests for this type of violation.

When he approached the vehicle, the officer observed a cased shotgun lying on the seat between defendant and his passenger. The officer requested that defendant produce a valid driver's license and FOID card, but defendant possessed neither. After defendant's arrest,

the trial court granted defendant's motion to quash the arrest and suppress evidence. The State's timely appeal followed.

Although defendant has not filed an appellee's brief, we will decide the merits on appeal because the issues are sufficiently simple that we do not need the aid of an appellee's brief. *People v. Schmidt*, 286 Ill. App. 3d 322, 323 (1997), citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

■ Generally, a trial court's ruling on a motion to quash the arrest and suppress evidence will be disturbed only if the decision is manifestly erroneous. *People v. Mourecek*, 208 Ill. App. 3d 87, 91 (1991). However, an issue is a legal one subject to *de novo* review when neither the facts nor the credibility of the witnesses is questioned. *Mourecek*, 208 Ill. App. 3d at 91. The arresting officer was the only witness called at the motion hearing, and nothing in the appellate record suggests that the parties dispute the facts.

■ Conservation officers have the same powers to detain, search, and arrest as other law enforcement officers. *Fulk v. Roberts*, 164 Ill. App. 3d 194, 198 (1987). Therefore, a conservation officer may stop and temporarily detain a motorist for the purpose of a limited investigation, absent probable cause to arrest, if the officer is able to point to specific and articulable facts which, taken together with reasonable inferences drawn from the officer's experience, reasonably justify the investigative intrusion. *Fulk*, 164 Ill. App. 3d at 198.

■ Here the trial court concluded that the traffic stop was improper because the conservation officer did not see defendant commit any violation of traffic or hunting laws. However, an officer need not actually witness a traffic violation to effect a traffic stop. *People v. Rosemeier*, 259 Ill. App. 3d 695, 697 (1994). Furthermore, a conservation officer may stop a motorist if the officer reasonably believes that the motorist is currently engaged in illegal hunting. *Fulk*, 164 Ill. App. 3d at 199.

■ Section 1.19 of the Code authorizes in-the-field examination of equipment and necessarily authorizes a conservation officer's brief stop for the investigation of possible Code violations. *People v. Layton*, 196 Ill. App. 3d 78, 88 (1990). Section 1.19 also authorizes the examination of vehicles that game officers have "reason to believe" contain wild birds or mammals. *Layton*, 196 Ill. App. 3d at 88. "Reason to believe" is probable cause to search which arises from indicia that the person is a hunter who is immediately or was very recently engaged in hunting. *Layton*, 196 Ill. App. 3d at 88.

■ If an individual is within or near a hunting site, he fits this "hunter's profile" when he is seen wearing hunting garb, carrying a weapon, or carrying game or a game bag. *Layton*, 196 Ill. App. 3d at

88. Defendant fit the hunter's profile. He was wearing blaze orange hunting clothing during deer season, and he was also seen driving slowly while looking for wildlife in an area known for deer hunting. The officer testified that he had made several stops for illegal roadside hunting and that defendant fit the profile of a roadside hunter.

■ *Layton* reveals that a valid stop of a hunter in the field requires only that the conservation officer reasonably believe that the individual is currently or was recently hunting. See *Layton*, 196 Ill. App. 3d at 87-88 (when he receives a hunting license, a hunter consents to a limited in-the-field search for Wildlife Code violations). However, *Fulk* suggests that a valid stop of a motorist requires that a conservation officer reasonably believe that the individual is currently hunting illegally. *Fulk*, 164 Ill. App. 3d at 199.

Therefore, a conservation officer may not stop a motorist if the officer merely believes that the motorist is currently or was very recently engaged in lawful hunting. Because a traffic stop is a greater intrusion than a brief detention in the field, we require that an officer must reasonably believe that a motorist's hunting is illegal before the officer may make a valid stop. Nevertheless, we conclude that this officer's stop was proper because he reasonably believed that defendant was engaged in illegal hunting at that time.

■ Finally, we must determine whether the officer properly requested the production of defendant's driver's license and FOID card. In *Fulk*, the Appellate Court, Fifth District, concluded that section 1.19 of the Code permitted two conservation officers to stop and search a motorist whom they believed was engaged in illegal hunting. *Fulk*, 164 Ill. App. 3d at 199. While searching the motorist's truck for guns, the officers properly obtained and determined the validity of the motorist's driver's license. *Fulk*, 164 Ill. App. 3d at 196-97. Here the officer's request for defendant's driver's license was similarly proper.

In this case, the officer approached defendant's vehicle and observed a cased shotgun lying in plain view. In *Mourecek*, a police officer effected a routine traffic stop and observed live ammunition lying on the floor of the defendant's car. *Mourecek*, 208 Ill. App. 3d at 90. This court concluded that the officer had probable cause to arrest the defendant for a FOID card violation because the defendant had told the officer that he possessed no identification. *Mourecek*, 208 Ill. App. 3d at 94. We conclude that a conservation officer may request the production of a valid FOID card after he discovers a firearm during his investigation of possible Code violations.

For the foregoing reasons, the order of the circuit court of Jo

234

Daviess County is reversed and remanded for further proceedings consistent with this order.

Reversed and remanded.

BOWMAN, P.J., and HUTCHINSON, J., concur.