THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL COLYAR, Defendant-Appellee.

First District (6th Division)   No. 1—09—0323

Opinion filed December 30, 2010.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Miles J. Keleher, and Ugo H. Buzzi, Assistant State's Attorneys, of counsel), for the People.

Algis F. Baliunas, of Orland Park, for appellee.

PRESIDING JUSTICE GARCIA delivered the opinion of the court:

The State appeals the circuit court's order granting defendant Michael Colyar's motion to suppress bullets and a gun seized from the defendant's car. The State argues that after the officers saw a bullet in plain view inside the defendant's car, they reasonably believed the bullet indicated the presence of a gun; thus, the officers acted lawfully in ordering the defendant and his passengers out of the car, securing them in front of the car by handcuffing them, seizing the bullet in plain view in a plastic bag, which contained other bullets, and searching the interior of the car, which resulted in the seizure of a handgun hidden from view.

We affirm the circuit court's ruling because the precipitate police action is not supported by probable cause that a crime had occurred based on a plain-view sighting of a bullet because a bullet is not contraband *per se*; nor did the *Terry* investigative stop based on the

plain-view sighting of the bullet, leading to the recovery of more bullets, escalate into probable cause that the defendant's vehicle contained evidence of criminal activity when the police officers failed to confirm their suspicions that possession of the bullets was a crime.

## BACKGROUND

On October 28, 2008, testimony from a single witness was presented on the defendant's pretrial motion to quash arrest and suppress evidence. William Alcott testified that on June 29, 2006, he was a Homewood police officer partnered with Detective Johnson of the Glenwood police department as part of a suburban task force. At about 8:45 p.m., they drove to the Super 8 Motel on a frontage road in East Hazel Crest where they would routinely patrol the motel parking lots "for parties and stuff of that nature." The officers observed a green Honda parked on motel property, not on the public way.

Using photographic exhibits[1] depicting the parking lot, Officer Alcott demonstrated how he drove his unmarked Crown Victoria police car onto the motel property, but the Honda blocked him from turning into the south parking lot where the motel entrance is located. After driving around the motel building, Officer Alcott parked the police car and observed the Honda for another "[t]wo to three minutes, tops." The Honda's engine was running, the defendant was in the driver's seat, and there was a second individual in the car. There were no other vehicles nearby and "not a lot of traffic" at the motel's front doors. The officers had not received a call of suspicious or criminal activity from the motel.

After two to three minutes of observing the Honda, Officer Alcott moved the police car closer to the Honda, but kept to the right of the Honda so as not to block it. Both officers exited their car to determine why the Honda was parked there. The officers were dressed in plain clothes, each wearing a vest with a badge, a name tag, and "POLICE" printed across the back. To the casual observer, they were police officers. In addition to their police vests, the officers carried handcuffs and flashlights. The officers were armed, but their guns were not drawn as they approached the Honda. As the officers approached on foot, a third individual came out of the motel and, walking at a normal rate, entered the Honda before the officers arrived.

When Officer Alcott reached the driver's side of the Honda, with Detective Johnson at the passenger side, Officer Alcott told the defendant he was blocking the entrance. The defendant replied he had parked there to pick up someone. Detective Johnson advised Officer

---

[1]The exhibits, admitted in evidence, are not included in the record on appeal.

Alcott that there was a plastic bag in the center console of the Honda. Officer Alcott shined his flashlight into the car and could "see a bullet sticking up" in a plastic bag on the center console. The cartridge appeared to be a rifle round, about three inches in length. Officer Alcott ordered the three occupants out of the Honda and "[b]rought the subjects to the front of the vehicle." "[T]hey were all placed in handcuffs immediately." Officer Alcott testified that at that moment the three men were in custody. After the three men were handcuffed and moved to the front of the Honda, Officer Alcott searched the defendant[2] and recovered from his pants pocket one live round of what was later determined to be .454-caliber ammunition. The other two men were also searched. After the three individuals were placed "in custody," Detective Johnson recovered the plastic bag from the console of the Honda and found it to contain five rounds of .454-caliber ammunition, including the round seen in plain view.

Officer Alcott testified that after he recovered the cartridge from the defendant's pocket and retrieved the other cartridges in the car, he believed there might be a gun in the Honda. Officer Alcott's partner, Detective Johnson, searched the Honda and recovered a .454 Redwing revolver from underneath the floor mat of the front passenger floorboard. The defendant and his two passengers were transported to the police station where subsequent investigation established the defendant was a registered owner of the Honda and had a valid driver's license.

Following Officer Alcott's testimony, the defense rested, as did the State. On subsequent court dates, the circuit court heard argument and considered case law. On November 6, 2008, the court ruled that the officers' initial approach to the Honda did not constitute a seizure and that the seizure of the bullets in plain view in the car and from the defendant's pocket were lawful "pursuant to *Terry*." However, the possession of the bullets was not illegal in itself. The court stated, "Presumably the state's theory is search incident to that lawful arrest that allowed them to conduct that search." The court reasoned that without an inquiry by the officers to determine whether the defendant possessed a firearm owner's identification (FOID) card, the possession of bullets *per se* was not a crime. The court granted the motion to suppress as to the gun, but denied the motion as to the bullets. On December 4, 2008, the State filed a written motion to reconsider the suppression of the gun and the defendant orally moved to reconsider the denial of the suppression of the bullets.

---

[2]Officer Alcott described the search of the defendant initially as a "pat[ ]down," and later characterized it as a custodial search.

On January 7, 2009, the court reversed its decision as to the bullets: "I believe the officer *** in this case, should have inquired whether there was F.O.I.D. card regarding the seizure of the bullets. Without [an inquiry regarding] an F.O.I.D. card, the bullets are not illegal." As a consequence, the seizure of all the evidence flowed from "the illegal search and custodial search based upon unlawful arrest for possession of ammo without F.O.I.D. card." The State's motion to reconsider, contending that "the officers were justifiabl[y] concerned for their safety in that those bullets could reasonably indicate the presence of a gun," was entered and continued as agreed upon. The State, however, filed its certificate of impairment and notice of appeal on February 2, 2009, before its reconsideration motion could be ruled upon.

## ANALYSIS

The State divides its single issue on appeal challenging the circuit court's suppression order into six subparts. The State first contends that the officers' approach to the Honda did not implicate the fourth amendment. See *People v. Luedemann*, 222 Ill. 2d 530, 549, 857 N.E.2d 187 (2006) ("the law *** provides that a police officer does not violate the fourth amendment merely by approaching a person in public to ask questions if the person is willing to listen"). The circuit court so ruled; that ruling stands as it is not challenged on appeal.

The State next asserts that "the seizure of the bullet in plain view was constitutional where the police believed it constituted evidence of criminal activity, and its presence in the passenger compartment reasonably justified the search for a gun in the vehicle." This subpart presents the crux of the State's contention on appeal. We understand the State to argue that when the officers observed the bullet in plain view on the Honda's console, they had probable cause to believe a crime had been committed. Based on the existence of probable cause, the officers arrested the defendant and performed a custodial search, which led to the recovery of another bullet in the defendant's pants pocket. Based on the recovery of the bullets, as the State asserted in its motion to reconsider, "the officers were justified to search the passenger compartment to insure their own safety," citing *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983).[3]

---

[3]The citation to *Long* raises the question whether the State sought to change its theory at the suppression hearing to justify the search based on reasonable suspicion under *Terry* rather than a search incident to an arrest. If that was the State's intention, it was incumbent upon the State to act upon it below. The State precluded the circuit court from ruling on its motion to reconsider when it filed this instant appeal before the circuit court could rule.

Should we disagree with the State's view of the initial police action, in its last subpart, the State asserts that "the police officers would have inevitably discovered the gun as a search incident to defendant's arrest for possession of ammunition without a valid FOID card." As support, the State contends in its main brief that "the officers would have checked defendant's criminal background prior to releasing him and would have discovered that defendant was a convicted felon. As a convicted felon, defendant could not be in possession of a valid FOID card. See 430 ILCS 65/4(a)(2)(ii), 8(c) (West 2008). Possession of ammunition without possession of a valid FOID card is a Class A misdemeanor. 430 ILCS 65/2(a)(2), 14(e) (West 2008)."

## Standard of Review

Review of a circuit court's ruling on a motion to suppress evidence is subject to a two-part standard. We defer to the circuit court's factual findings unless they are against the manifest weight of the evidence. *People v. Cosby*, 231 Ill. 2d 262, 271, 898 N.E.2d 603 (2008). If the findings of fact are not contrary to the manifest weight of the evidence, we review *de novo* whether the suppression of the evidence is warranted given the facts as found by the circuit court. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799 (2003). We are free to assess the factual findings in relation to the issues presented to draw our own conclusion on whether relief is warranted. *Gherna*, 203 Ill. 2d at 175.

Section 114—12(e) of the Code of Criminal Procedure of 1963 mandates that an order granting a motion to suppress "state the findings of fact *** upon which the order *** is based." 725 ILCS 5/114—12(e) (West 2008). The suppression order before us, however, does not contain express findings of fact. Nonetheless, the record makes clear the circuit court's legal ruling: the officers did not have probable cause to search the Honda based on their observation of a bullet in plain view on the console of the Honda and the recovery of additional bullets, without first inquiring whether the defendant possessed a FOID card, the absence of which would make possession of the bullets illegal; thus, it was not reasonable for the officers to conclude that their observation of the single bullet in the plastic bag on the console, which triggered their actions, was evidence of criminal activity because a bullet is not contraband *per se*.

---

The State may not advance a new theory on appeal in an effort to overturn an adverse decision. "It is well settled that the theory upon which a case is litigated in the trial court cannot be changed on appeal." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 47 Ill. App. 3d 699, 705, 365 N.E.2d 66 (1977), citing *In re Estate of Leichtenberg*, 7 Ill. 2d 545, 131 N.E.2d 487 (1956).

This legal conclusion sufficiently informs us of the supporting inferences the circuit court may have drawn to reach its decision, albeit the observable facts, as the circuit court noted, "seem to be not in dispute." "Where more than one inference may be drawn from the facts, even uncontested facts, the question remains one for the trier of fact. [Citation.] The trial court's determination concerning factual matters, including the reasonable inferences to be drawn from the testimony, is entitled to deference [citations], and this determination will not be disturbed on review unless manifestly erroneous." *People v. Moore*, 286 Ill. App. 3d 649, 652, 676 N.E.2d 700 (1997).

We follow the circuit court's ruling in addressing the State's appeal by considering first whether there was probable cause to search the vehicle resulting in the seizure of the handgun and then, whether the suppression order was properly extended to the bullets that were discovered pursuant to a lawful *Terry* stop.

## The Handgun

As we set out, the circuit court initially granted the defendant's motion to suppress the handgun because probable cause did not exist to search the car. The circuit court reasoned that because the arresting officers did not inquire of the defendant whether he possessed a FOID card, the presence of the bullets alone could not give rise to probable cause of criminal activity because bullets are not contraband *per se*. Without probable cause, the search of the car was unlawful. Therefore, the officers acted precipitously when they removed the defendant (and the passengers) from the car, secured him at the front of the Honda by handcuffing him, and then searched the car, which ultimately resulted in the recovery of the handgun concealed under the front passenger seat floor mat.

The State contends that the officers' plain-view observation of the bullet in the plastic bag on the console of the car, the recovery of a second bullet in the defendant's pants pocket, and the seizure of the plastic bag from the car's console, which contained five bullets, provided probable cause to believe "that a gun might be present in defendant's vehicle." As authority for the proposition that "[t]he presence of a bullet in a vehicle creates a reasonable indication of the presence of a gun in the vehicle," the State cites *People v. Stack*, 244 Ill. App. 3d 393, 613 N.E.2d 366 (1993).

In *Stack*, following a jury trial, the defendant was convicted "of unlawful possession of weapons (ammunition) by a convicted felon." *Stack*, 244 Ill. App. 3d at 394. On appeal, he contended the circuit court erred in denying his motion to suppress two bullets seized from his car. The defendant "was initially arrested for disorderly conduct

and driving with a suspended license" as he exited his vehicle, leaving the driver's door open. *Stack*, 244 Ill. App. 3d at 395-96. The disorderly conduct charge stemmed from complaints by a female (D.S.) that the defendant "had been following her car, harassing her, and he threatened to kill her." *Stack*, 244 Ill. App. 3d at 395. The search of the defendant's car was described by the testifying officer at the hearing as " 'incident to the arrest.' " *Stack*, 244 Ill. App. 3d at 395. At the police station, the defendant was discovered to have a felony conviction. In denying the defendant's motion to suppress, the circuit court reasoned that "because there was no identification to show the vehicle belonged to defendant, and the officers did not know if defendant had rightful possession of the vehicle, it could not be left in a private parking lot." *Stack*, 244 Ill. App. 3d at 396. The vehicle was properly impounded and the ensuing inventory resulted in the seizure of the bullets in the interior of the vehicle, which the officer had observed in the car before the car was moved. *Stack*, 244 Ill. App. 3d at 396. On appeal, the defendant contended that absent any indication that the vehicle was stolen or that the private property owners requested the vehicle be removed, the search of the vehicle and the seizure of the bullets were unlawful. *Stack*, 244 Ill. App. 3d at 396.

While the *Stack* court rejected the circuit court's rationale that the bullets were subject to seizure during the inventory process of the impounded vehicle, the court ruled that the officer's view of the bullets in "plain view" on the driver's seat justified the seizure of the bullets and the search of the vehicle for a gun. *Stack*, 244 Ill. App. 3d at 397. To support the search of the vehicle for a gun, the *Stack* court observed: "The presence of a bullet on the floorboard of an automobile has been held to create a reasonable indication of the presence of a gun in the vehicle." *Stack*, 244 Ill. App. 3d at 397, citing *State v. Wright*, 104 Nev. 521, 523, 763 P.2d 49, 50 (1988). No gun, however, was ever recovered. The seizure of the bullets was justified because they "had some evidentiary value in regard to proof of the seriousness of defendant's alleged threats to kill D.S." *Stack*, 244 Ill. App. 3d at 398. The *Stack* court did not hold that the "reasonable indication of the presence of a gun" was the equivalent of probable cause. In any event, we agree with the circuit court's view of *Stack*: at best the observation connecting bullets to the presence of a gun is dicta, where no gun was recovered. We decline the State's invitation to expand the holding of *Stack* beyond its facts.

The State also relies heavily on *State v. Wright*, 104 Nev. 521, 763 P.2d 49 (1988), cited by the court in *Stack*. In *Wright*, after the police lawfully stopped a vehicle occupied by the defendants on a public highway because they had reasonable suspicion that it was involved in

a robbery the previous night, one officer observed a bullet lying on the front floorboard of the vehicle. The Nevada Supreme Court noted the observation relied upon by the court in *Stack*: "The presence of the bullet could reasonably indicate the presence of a gun \*\*\*." *Wright*, 104 Nev. at 523, 763 P.2d at 50. However, before the bullet was observed and the defendants were searched, the police had already determined that the defendants were felons. *Wright*, 104 Nev. at 523, 763 P.2d at 50. Though it is unclear from the decision in *Wright* as to the law in Nevada, in Illinois, as the State asserts in its main brief, felons cannot lawfully possess a bullet. The Nevada *Wright* court ruled that the lawful stop of the defendants' vehicle to investigate a robbery that occurred that day justified the "search of the passenger compartment to insure the officers' safety." *Wright*, 104 Nev. at 523, 763 P.2d at 50, citing *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983). However, because the defendants in *Wright* were felons, *Wright* provides no guidance on the case before us, except to the extent the officers here had obtained information that the defendant was a felon, his possession of the single bullet would have provided probable cause of a crime. However, the officers never acquired such information before the search and seizure of the bullets and handgun. We write on a clean slate.

After the State took its appeal in this case, the United States Supreme Court determined that a vehicle may be lawfully searched "incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351, 173 L. Ed. 2d 485, 501, 129 S. Ct. 1710, 1723 (2009). In *Gant*, the Supreme Court cited *Long* for the proposition that "[o]ther established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." *Gant*, 556 U.S. at 346, 173 L. Ed. 2d at 498, 129 S. Ct. at 1721. *Long* "permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.' " *Gant*, 556 U.S. at 346-47, 173 L. Ed. 2d at 498, 129 S. Ct. at 1721, quoting *Long*, 463 U.S. at 1049, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481, citing *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1986).

In *Long*, two deputies observed a car driving erratically and at excessive speed; the car eventually swerved into a shallow ditch. When the deputies stopped to investigate, Long met the deputies at the rear of the car. Long appeared to be under the influence of something; he

twice did not respond to the initial requests of the deputies. When he was asked for the car's registration, Long turned and began walking toward the open door of the car. Through the open door, the officers observed a large hunting knife on the driver's seat floorboard. The officers immediately performed a *Terry* protective patdown, which revealed no other weapon. One deputy, without entering the car, observed something protruding from under the front seat armrest. The deputy recovered what turned out to be a pouch and inside the pouch discovered what appeared to be marijuana. In denying the defendant's motion to suppress, the trial court found the pouch was of a size that might conceal a gun. Under these facts, the Supreme Court ruled that the deputy's recovery of the pouch in the car was justified under the *Terry* principles because the deputies had a reasonable belief "that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long*, 463 U.S. at 1049, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481. In a footnote, the Supreme Court cautioned: "We stress that our decision does not mean that the police may conduct automobile searches *whenever* they conduct an investigative stop ***." (Emphasis in original.) *Long*, 463 U.S. at 1049 n.14, 77 L. Ed. 2d at 1220 n.14, 103 S. Ct. at 3481 n.14.

Here, the State does not contend that the officers' actions were prompted by their belief that the defendant was "dangerous." Such a claim would be at odds with the circuit court's decision and the inferences it must have drawn. It is also clear that because the defendant was handcuffed (along with the other occupants) at the front of the Honda, he could not "gain immediate control" of the handgun concealed below the floor mat of the front passenger seat. The exception in *Long* does not apply here.

In *Gant,* the Supreme Court reiterated the analysis that should be undertaken when the reasonableness of a warrantless search is challenged. "Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " *Gant,* 556 U.S. at 338, 173 L. Ed. 2d at 493, 129 S. Ct. at 1716, quoting *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest. [Citation.] The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant,* 556 U.S. at 338, 173 L. Ed. 2d at 493, 129 S. Ct. at 1716. In a footnote, the Supreme Court

noted that justifying a search of a vehicle once the occupants have been secured should be an exception. "Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be a rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." *Gant*, 556 U.S. at 343 n.4, 173 L. Ed. 2d at 496 n.4, 129 S. Ct. at 1719 n.4. *Gant*, however, did not change the law regarding searches of vehicles. "If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798[, 820-21, 72 L. Ed. 2d 572, 590-91, 102 S. Ct. 2157, 2170-71] (1982), authorizes a search of any area of the vehicle in which the evidence might be found." *Gant*, 556 U.S. at 347, 173 L. Ed. 2d at 498, 129 S. Ct. at 1721.

Here, we agree with the circuit court that more was required to justify the search of the defendant's vehicle after the officers observed a bullet in plain view, which precipitated the officers' action. Upon observing the bullet, the officers immediately removed the occupants from the vehicle, secured each in front of the Honda by handcuffing them, and placed each in custody without determining whether the bullet observed by the officers was in fact evidence of a crime. While the circuit court focused on the absence of any inquiry concerning whether the defendant or any of the passengers possessed a FOID card, it could just as well have stated that had the officers inquired whether any of the occupants was a convicted felon, probable cause would have existed for an arrest. As the State correctly points out, the absence of a valid FOID card makes possession of ammunition "a Class A misdemeanor" and a convicted felon cannot "be in possession of a valid FOID card." It is also telling that the State does not identify the crime believed to have been committed or about to be committed by the defendant before the search ensued. Rather, the State appears to assert that the search was justified based on a crime the officers had no information had been committed: "the police officers would have inevitably discovered the gun as a search incident to defendant's arrest for possession of ammunition without a valid FOID card."

We agree with the circuit court. Probable cause to believe that a weapon was present in the defendant's car did not exist based on the information the officers had at the time of the search of the defendant's car. Under the facts and circumstances of this case, the record fails to support that an exception to the fourth amendment warrant requirement applies to justify the search of the defendant's car.

We turn now to the State's claim based on the *Terry* stop.

## The Bullets

As set out above, the circuit court, upon reconsideration, extended its suppression order to the bullets. The circuit court initially ruled

that the bullets were properly seized pursuant to *Terry*. In its ruling on the defendant's motion to reconsider, the circuit court did not change its ruling that a lawful *Terry* stop occurred. Rather, the circuit court ruled that irrespective of the lawful *Terry* stop, further investigation was required to establish that the bullets were contraband before they could be lawfully seized by the officers. "I believe the officer *** in this case should have inquired whether there was F.O.I.D. card regarding the seizure of the bullets." In so ruling, the circuit court principally relied on a federal case: *United States v. Blom*, 242 F.3d 799 (8th Cir. 2001). We are persuaded by the *Blom* reasoning as well.

In *Blom*, the federal appeals court considered the defendant's claim that "the district court erred in denying his motions to suppress ammunition seized by state authorities during the warrant searches of [three different properties, two homes and a vehicle]." *Blom*, 242 F.3d at 807. Ammunition was seized from all three, but only two seizures were the subject of the appeal: ammunition from a vehicle searched pursuant to a warrant and ammunition from a second vehicle that was seized and impounded under the authority of a warrant for one of the real properties. *Blom*, 242 F.3d at 808. The government argued, consistent with the district court's findings, "that the ammunition was contraband falling within the plain-view exception to the Fourth Amendment's warrant requirement." *Blom*, 242 F.3d at 808. The defendant claimed, however, that Minnesota law only prohibited "a convicted felon from possessing a firearm, but not ammunition." *Blom*, 242 F.3d at 808. The defendant further claimed that the officers that seized the ammunition did not know he was a convicted felon. The court's reasoning in rejecting the government's argument guides us here:

"We reject the government's suggestion that a police officer with no knowledge of a citizen's criminal history may constitutionally seize firearms or ammunition without a warrant, so long as the citizen turns out to be, in hindsight, a convicted felon. In plain-view cases relied upon by the district court, the officers seizing a firearm or ammunition either *knew* the suspect was a convicted felon, [citation], or *knew* the weapon was linked to the criminal activity being investigated [citation]. Thus, the government must prove the officers knew *when they seized the ammunition* that Blom was a convicted felon." (Emphasis in original.) *Blom*, 242 F.3d at 808.

Ultimately, the federal court of appeals ruled that the seized ammunition from one vehicle "was sufficiently linked to criminal activity to justify its seizure on plain-view grounds." *Blom*, 242 F.3d at 809. As to the ammunition seized from the other vehicle, the government

"failed to prove—at the suppression hearing or at trial—that this seizure came within the plain-view exception to the Fourth Amendment's warrant requirements [as ammunition is not contraband]." *Blom*, 242 F.3d at 809. Nonetheless, "the admission of the small amount of ammunition seized from the [second vehicle] was harmless error." *Blom*, 242 F.3d at 809.

The State's contention here that the plain-view doctrine saves the evidence from suppression is similarly misplaced. "[I]f police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object, *i.e.*, if the incriminating character of the object is not immediately apparent, the plain view doctrine cannot justify the seizure." *People v. Jones*, 215 Ill. 2d 261, 272, 830 N.E.2d 541 (2005), citing *Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 124 L. Ed. 2d 334, 345, 113 S. Ct. 2130, 2136-37 (1993). "[The plain view] doctrine applies only when the evidence is seized incident to an arrest or is contraband." *People v. Humphrey*, 361 Ill. App. 3d 947, 950, 836 N.E.2d 210 (2005). As the circuit court ruled, the incriminating character of the bullets was never established because the bullets were contraband only if the defendant did not possess a valid FOID card, which the officers never inquired about.

The State's contention that the discovery of the bullet in the defendant's pants pocket and that it was lawfully seized because it resulted from a patdown of the defendant pursuant to *Terry* seeks to prove too much. While the officers may have had good reason to remove the bullet from the defendant's pants pocket, neither the discovery of a bullet on the defendant's person nor the recovery of a bullet from the car's console provided evidence that a crime had been committed based on the information the police developed. It is fundamental that a lawful *Terry* stop does not authorize police conduct that requires probable cause. " 'The purpose of a *Terry* stop is to allow a police officer to investigate the circumstances that provoke suspicion and either confirm or dispel his suspicions.' " *People v. Close*, 238 Ill. 2d 497, 512 (2010), quoting *People v. Ross*, 317 Ill. App. 3d 26, 31, 739 N.E.2d 50 (2000). An officer may seize an object discovered during a *Terry* stop if the officer has "probable cause to believe that the object is contraband." *People v. DeLuna*, 334 Ill. App. 3d 1, 13, 777 N.E.2d 581 (2002).

The possession of ammunition is an offense only when the person possessing the ammunition does not possess a valid FOID card. See *People v. Mourecek*, 208 Ill. App. 3d 87, 93, 566 N.E.2d 841 (1991) (independent basis for the defendant's arrest existed based on the plain-view recovery of live ammunition clips when the defendant had earlier stated to the arresting officer that he had no identification,

from which "it was reasonable to infer that defendant did not possess a FOID card"). The officers in this case failed to take the simple, obvious, and nonintrusive action of asking the defendant to produce a FOID card. See *People v. Levens*, 306 Ill. App. 3d 230, 233, 713 N.E.2d 1275 (1999) ("conservation officer may request the production of a valid FOID card after he discovers a firearm during his investigation of possible [Wildlife Code (520 ILCS 5/1.19 (West 1996))] violations").

The bullets observed on the console of the car and recovered from the defendant during the patdown did not confirm to the officers that the defendant engaged in conduct that constituted a crime. The State's repeated claims that the defendant is a convicted felon are to no avail when they constitute no more than "hindsight" information. *Blom*, 242 F.3d at 808. As the United States Supreme Court noted: "the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Arizona v. Hicks*, 480 U.S. 321, 329, 94 L. Ed. 2d 347, 357, 107 S. Ct. 1149, 1155 (1987) (officer's movement of stereo equipment, not subject to plain-view doctrine, constituted a search, which must be supported by probable cause).

The cases the State relies upon fail to support its contrary position.

In *People v. Williamson*, 58 Wis. 2d 514, 206 N.W.2d 613 (1973), the officers conducted a *Terry* stop of the defendant while he was operating a vehicle. The defendant admitted to not having his driver's license or any other type of identification. The defendant was ordered out of his vehicle and, during a patdown, the officer detected hard objects in the defendant's pants pocket. The officer asked the defendant to remove the objects, which "turned out to be six .38-caliber cartridges." *Williamson*, 58 Wis. 2d at 519, 206 N.W.2d at 616. Upon recovery of the bullets, the defendant was asked to consent to the search of the car, which the trial court found the defendant gave when he said, " 'I don't care.' " *Williamson*, 58 Wis. 2d at 520, 206 N.W.2d at 616. The officer recovered a .38-caliber handgun from the glove box. *Williamson*, 58 Wis. 2d at 520, 206 N.W.2d at 616. We find no reason to disagree with the *Williamson* court's conclusion that no constitutional violation occurred. However, the analysis in *Williamson* does not support the State's position here where the search was not conducted based on consent.

In *State v. Lizotte*, 11 Conn. App. 11, 15, 525 A.2d 971, 973 (1987), the officers made a stop of a van driven by the defendant after observing an unsafe lane change. One of the officers looked into the passenger compartment and "saw a leather ammunition belt containing ammunition on the floor of the van just to the right rear of the operator's seat." *Lizotte*, 11 Conn. App. at 14, 525 A.2d at 972. The

ammunition belt was partially concealed by a towel. The trial court found the ammunition belt to be the sort that often had attached a gun holster. *Lizotte*, 11 Conn. App. at 18, 525 A.2d at 975 ("The court deemed as 'common knowledge that pistols are carried in holsters attached to belts such as the one observed' "). The defendant was immediately removed from the van and patted down, which revealed no weapons. The defendant was handcuffed and placed in the police car, which the court of review concluded constituted the arrest of the defendant. *Lizotte*, 11 Conn. App. at 18, 525 A.2d at 974. The defendant challenged the police entry into his van to remove the towel, which revealed a fully loaded handgun. Though only partially concealed, the towel concealed that portion of the belt where the gun holster would be attached. The trial court found the gun belt and ammunition were " 'highly indicative of the presence of a firearm.' " *Lizotte*, 11 Conn. App. at 18, 525 A.2d at 975. The court of review upheld the denial of the defendant's motion to suppress, finding the police had probable cause that the defendant "was carrying a weapon in a motor vehicle in violation of [Connecticut law]." *Lizotte*, 11 Conn. App. at 20, 525 A.2d at 976. *Lizotte*, with a gun belt and ammunition in plain view, is not similar to the case before us.

In *United States v. Richards*, 967 F.2d 1189, 1193 (8th Cir. 1992), following a traffic stop, the officer learned that the driver was "a recently released felon." The officer accompanied the defendant to his police car and returned to the defendant's car. The officer asked the remaining occupant (Harp) to exit. Upon getting out, the "officer noticed the .22 cartridges sitting in plain view in the passenger compartment." *Richards*, 967 F.2d at 1193. The officer then "made a limited sweep of the passenger compartment and discovered the marijuana." *Richards*, 967 F.2d at 1193. The court found the "limited sweep permissible during a road-side stop," citing *Long*, 463 U.S. at 1051, 77 L. Ed. 2d at 1221, 103 S. Ct. at 3481. "The evidence recovered by this initial search gave sufficient probable cause to arrest Richards and Harp." *Richards*, 967 F.2d at 1193. As we stated, had the officers here received information that the defendant was a convicted felon, there would have been probable cause to arrest. However, as the State acknowledges in its brief, that information would have come to the officers only after they "checked defendant's criminal background prior to releasing him."

In *People v. Moore*, 328 Ill. App. 3d 1047, 768 N.E.2d 384 (2002), the circuit court denied the defendant's motion to quash arrest, but granted his motion to suppress "a gun found during the search of defendant's car after his arrest." *Moore*, 328 Ill. App. 3d at 1049. The defendant was attempting to drive out from a residential driveway

when a police car pulled in, blocking his exit. The defendant exited his car and, after a short time, ran off. The officer gave chase on foot. The officer was familiar with the defendant and "was aware that defendant was a convicted felon." *Moore*, 328 Ill. App. 3d at 1049. During the chase, the officer believed he saw the defendant toss a handgun. The defendant was arrested by an assisting officer. No handgun was recovered along the chase path. Upon the officers' return to the defendant's car, they observed "a green, zippered *gun case* in plain view between the driver's seat and the console." (Emphasis added.) *Moore*, 328 Ill. App. 3d at 1050. The officers retrieved the gun case and discovered a revolver and ammunition inside. The *Moore* court reversed the grant of the defendant's motion to suppress because "the gun and related items are admissible under the plain view doctrine." *Moore*, 328 Ill. App. 3d at 1052. Based on the chasing officer's knowledge that the defendant was a convicted felon, his observation of the gun case in plain view in the defendant's vehicle "was certainly evidence that a crime may have been committed." *Moore*, 328 Ill. App. 3d at 1054. As the State repeatedly informs us, a convicted felon may not lawfully possess a gun in Illinois. *Moore* is similar to *Richards* because each involved a convicted felon prohibited by law from possessing either a weapon or ammunition.

The one case cited by the State similar to the instant case is *State v. Garcia Garcia*, 169 Ariz. 530, 531, 821 P.2d 191, 192 (1991). In *Garcia Garcia*, the Arizona Court of Appeals reversed the trial court's grant of the defendants' motion to suppress evidence seized during an automobile search, which was prompted in part by an officer noticing "bullets lying on the front seat." *Garcia Garcia*, 169 Ariz. at 531, 821 P.2d at 192. The court first ruled: "The bullets, coupled with appellees' suspicious conduct, were enough to give a reasonable suspicion of criminal activity though not enough for probable cause for an arrest." *Garcia Garcia*, 169 Ariz. at 532, 821 P.2d at 193. Though it found no probable cause for an arrest of the defendants, the court nonetheless sanctioned the search of the defendants' vehicle based on officer safety under *Terry*. "[E]ven though appellees were under police control during the search, there might well have been an officer safety problem absent the search. When the appellees were released, they would immediately have access to the vehicle and any weapons located therein, [citation], with which they could have threatened the officers' safety." *Garcia Garcia*, 169 Ariz. at 532, 821 P.2d at 193. We question whether the reasoning of the Arizona court can stand in light of *Gant* based on the Arizona court's finding that the "appellees were under police control." *Garcia Garcia*, 169 Ariz. at 532, 821 P.2d at 193. In *Gant*, the Supreme Court made clear that *Terry* does not authorize the

search of a vehicle (in the absence of probable cause), except when the circumstances in *Long* are established. *Long* "permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.'" *Gant*, 556 U.S. at 346-47, 173 L. Ed. 2d at 498, 129 S. Ct. at 1721, quoting *Long*, 463 U.S. at 1049, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481, citing *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The indisputable fact that the occupants, *if released*, will return to the vehicle cannot justify a full-blown search of the vehicle without swallowing the "limited sweep" authorized by *Long*. "We stress that our decision does not mean that the police may conduct automobile searches *whenever* they conduct an investigative stop ***." (Emphasis in original.) *Long*, 463 U.S. at 1049 n.14, 77 L. Ed. 2d at 1220 n.14, 103 S. Ct. at 3481 n.14. We agree with the Arizona court's ruling, however, that the evidence adduced was "not enough for probable cause for an arrest." *Garcia Garcia*, 169 Ariz. at 532, 821 P.2d at 193. This supports the conclusion we reached here; we differ only as to the scope of the search authorized by a lawful *Terry* stop.

The State also cites a New York trial court decision (*People v. Catalano*, 134 Misc. 2d 621, 512 N.Y.S.2d 626 (1987)) and unpublished dispositions with no precedential value in their own jurisdictions (*State v. Ferguson*, 135 Wis. 2d 544, 401 N.W.2d 28 (1986) (unpublished disposition); *City of Willowick v. Stephenson*, No. 98—L—144 (Ohio Ct. App. July 16, 1999) (not reported)), which we find no reason to address.

Finally, we reject out of hand the additional arguments presented by the State that presuppose the lawfulness of the seizure of the weapon and the lawfulness of the search of the Honda under an unspecified automobile exception to the fourth amendment warrant requirement and the recovery of the handgun under the inevitable discovery doctrine. See *People v. Estrada*, 394 Ill. App. 3d 611, 626, 914 N.E.2d 679 (2009) (arguments raised for the first time on appeal are forfeited). While the State raised the inevitable discovery doctrine in its motion to reconsider, the timing of the State's appeal prevented the circuit court from ruling on its argument, which means the argument is raised for the first time on appeal. In any event, the doctrine is inapplicable here where no evidence was introduced in the circuit court that the defendant was a convicted felon or that his vehicle, which was on private property, was subject to being impounded and its contents inventoried. See *Stack*, 244 Ill. App. 3d at 397 (written procedures for impounding vehicles must be introduced into evidence "to uphold an inventory search of those vehicles"), citing *People v. Williamson*, 241 Ill. App. 3d 574, 608 N.E.2d 943 (1993).

To summarize, when no information was developed that the defendant was about to commit or had committed a crime, the officers acted precipitously in searching the defendant's car after all of its occupants were secured by handcuffs at the front of the car. The officers escalated a lawful *Terry* investigative stop into a full-blown arrest of the defendant and then engaged in the search of the vehicle as incident to the arrest. As we have determined, the search of the vehicle required probable cause. That a lawful *Terry* stop occurred did not authorize the officers to engage in conduct that required probable cause, which the officers never developed. *DeLuna*, 334 Ill. App. 3d at 13 (an officer may seize an object discovered during a *Terry* stop if the "officer has probable cause to believe that the object is contraband"). The *Terry* stop did not justify the search of the defendant or the seizure of the bullets that were not contraband. See *Close*, 238 Ill. 2d at 509 ("the conduct that constitutes the crime is relevant" in assessing whether the police action is justified). The officers could have confirmed their suspicions by inquiring whether the defendant was a convicted felon or possessed a valid FOID card. Both could not be true. See *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325-26 (1983) ("investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time").

## CONCLUSION

We affirm the circuit court ruling that the search of the defendant's vehicle was not a lawful search in the absence of probable cause. While the officers engaged in a lawful *Terry* stop, the recovery of the bullets did not provide evidence of a crime in the absence of evidence that the defendant did not possess a valid FOID card or was a convicted felon. The officers improperly escalated the investigative stop into a full-blown arrest of the defendant and then engaged in the search of the vehicle as incident to the arrest. The circuit court did not err in granting the defendant's motion to suppress the bullets and gun unlawfully seized by the police.

Affirmed.

HALL, J., concurs.

JUSTICE LAMPKIN, dissenting:

I respectfully dissent. I would reverse the circuit court's rulings that suppressed the five bullets and the revolver seized from defendant's car and the one bullet seized from defendant's pocket. I

believe the arresting officers, upon observing the plain-view bullet in the car, had reasonable suspicion to stop defendant and conduct protective searches for weapons on defendant's person and in the passenger compartment of his car. Then, the revolver found under the front-passenger floor mat gave the police probable cause to arrest defendant.

I do not agree with the majority's analysis of this case as a search incident to a lawful arrest and conclusion that *Gant* is controlling. Rather, I believe that this case involved a brief investigative detention, or *Terry* stop, and is governed by *Long*, which held that police officers may search the passenger compartment of a car when no arrest has been made if they reasonably believe that the suspect is dangerous and may gain immediate control of weapons. *Long*, 463 U.S. at 1049, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481.

Where a motion to quash arrest or suppress evidence turns on a legal question of reasonable suspicion or probable cause, we apply *de novo* review. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). When an officer observes "possibly criminal behavior," he may make an investigatory stop without probable cause and make "reasonable inquiries" to confirm or dispel his suspicions. *Terry*, 392 U.S. at 22, 30, 20 L. Ed. 2d at 907, 911, 88 S. Ct. at 1880, 1884. For a stop to be justifiable under *Terry*, the officer must present specific, articulable facts which would cause a reasonable person to fear for his safety or the safety of others. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *People v. Galvin*, 127 Ill. 2d 153, 174 (1989). Because an officer often must make quick judgments, the reasonableness of his conduct must be judged on the basis of his responsibility to prevent crime and catch criminals. *People v. Stout*, 106 Ill. 2d 77, 86-87 (1985). Reasonableness is measured in objective terms by examining the totality of the circumstances. *People v. Moss*, 217 Ill. 2d 511, 518 (2005).

Officer Alcott's testimony at the suppression hearing established the following sequence of events. First, the police officers approached defendant's car on the evening in question to investigate why he was blocking a parking lot entrance. The police officers observed, in plain view, one bullet in a plastic bag on the center console in defendant's car. The police officers ordered defendant and his two passengers out of the car, handcuffed them, and brought them to the front of the car. Officer Alcott removed the plastic bag from the console and saw that it actually contained five bullets. Officer Alcott then performed a protective patdown search on defendant and found one bullet in his pants pocket. Detective Johnson, who had searched the two passengers, then searched defendant's car and found the revolver underneath the front-passenger floor mat. Defendant and the two passengers were transported to the police department.

According to the record, Officer Alcott was never directly questioned about when defendant was placed under arrest. Although the majority seems to attribute certain statements to Officer Alcott about defendant and his passengers being "in custody," the record indicates that those words were actually spoken by defense counsel during his questioning of Officer Alcott. Moreover, counsel never clarified whether "in custody" meant that defendant was placed under arrest or merely detained during the investigatory stop. Consequently, I do not conclude from the vague statements in the record about defendant being "in custody" that the police officers arrested him right after ordering him out of his car based upon observing the plain-view bullet on the console.

I agree with the majority that the officers' initial approach to defendant's car and question about blocking the entrance did not implicate the fourth amendment. I disagree, however, with the remainder of the majority's analysis because I believe the situation progressed into a lawful *Terry* stop when the officers saw the plain-view bullet in defendant's car. Even though the plain-view bullet was not contraband *per se*, the totality of the circumstances here gave the officers a reasonable, articulable suspicion to justify a stop.

Specifically, defendant's conduct on the evening in question, *i.e.*, sitting in his car with another passenger and blocking a parking lot entrance while his car engine was running, had drawn the attention of the officers and prompted them to approach him and make inquiries. This meant that the officers had to drive their vehicle off the street, enter the parking lot, which had little or no pedestrian or vehicular traffic, and leave the relative safety of their car to question defendant. Once the two officers were standing at defendant's car, which now contained three men, the officers were in a vulnerable position.

Contrary to defendant's characterization of the situation as "benign," it is reasonable to infer from the undisputed facts that the officers believed their safety was in danger because the presence of the plain-view bullet raised their reasonable suspicion that a gun might also be in the passenger compartment of defendant's car. *Stack*, 244 Ill. App. 3d at 397, citing *Wright*, 104 Nev. at 523, 763 P.2d at 50. See also *Garcia Garcia*, 169 Ariz. at 531-32, 821 P.2d at 193 (because bullets strongly imply that guns are nearby, the bullets on the front seat of the car and the defendants' conduct justified a protective search of the passenger compartment of the car); *People v. Kantowski*, 98 Ill. 2d 75, 83 (1983) ("it would have been profoundly foolish for the officer not to be concerned that a man carrying a 10-inch knife on a city street may have other weapons"). Defendant argues that the plain-view bullet cannot justify a protective search because ammunition can

be carried in a car legally. Assuming *arguendo* that defendant possessed the ammunition lawfully, the validity of a *Terry* search does not depend on whether a weapon is possessed in accordance with state law. *Long*, 463 U.S. at 1052 n.16, 77 L. Ed. 2d at 1222 n.16, 103 S. Ct. at 3482 n.16.

Rational inferences from the undisputed facts warranted the officers' reasonable belief that defendant and his passengers were dangerous and could gain immediate control of weapons. The officers needed to act quickly to maintain the status quo and protect themselves from the danger posed by the possibility that a readily accessible gun was in the car. The officers could not have turned their backs on the occupants of the car, and it would have been unreasonable for the officers to wait and see what the occupants of the car might do next. Furthermore, it would have been absurd for the officers to remain in such a vulnerable position while questioning defendant and his passengers about their possible status as valid FOID cardholders and allowing them to rummage about in their car in order to retrieve any such documentation. "It is in precisely such a situation, where there are reasonable grounds to believe that there is a need for immediate investigatory action, that the constitutional standards and safeguards of *Terry v. Ohio* come into play." *Galvin*, 127 Ill. 2d at 172.

"[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Long*, 463 U.S. at 1047, 77 L. Ed. 2d at 1218, 103 S. Ct. at 3480. When an officer has properly stopped an individual and reasonably believes, based on specific and articulable facts, taken together with rational inferences from those facts, that the suspect is dangerous and may gain immediate control of a weapon, then the officer may search the passenger compartment of a vehicle, limited to those areas in which a weapon may be placed or hidden. *Long*, 463 U.S. at 1049, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3480-81.

Because the encounter here had evolved into a lawful *Terry* stop, the officers could order defendant and his passengers out of their car pending completion of the stop without violating the protections of the fourth amendment. *Sorenson*, 196 Ill. 2d at 433; *People v. Gonzalez*, 184 Ill. 2d 402, 413-14 (1998). Furthermore, handcuffing defendant and the two passengers during their detention did not convert this *Terry* stop into an arrest because it was necessary for the officers' protection while they investigated their reasonable suspicion that a gun might be concealed either on the car occupants or in the passenger compartment of the car. *People v. Starks*, 190 Ill. App. 3d 503, 509 (1989). Here, the scope of the officers' search was limited to that necessary for the discovery of potential weapons endangering them,

where they performed protective patdown searches of defendant and the passengers and then searched the passenger compartment of the car. After discovering the concealed revolver under the front-passenger floor mat, the officers had probable cause to arrest defendant for violating the law by carrying an immediately accessible firearm in his car.

The majority argues that after defendant and the passengers were outside the car and handcuffed, they were not dangerous and could not have gained immediate control of the revolver under the front-passenger floor mat. This same argument, however, was refuted in *Long*, where the Supreme Court noted that "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Long*, 463 U.S. at 1052, 77 L. Ed. 2d at 1221, 103 S. Ct. at 3482.

Furthermore, the majority's reliance on *Gant* is misplaced. In *Gant*, the Supreme Court upheld the suppression of cocaine found in the search of the defendant's car while he was handcuffed and locked in the back of a police car after his arrest for driving with a suspended license. *Gant*, 556 U.S. at 335, 173 L. Ed. 2d at 491, 129 S. Ct. at 1714. *Gant*, which addressed only a rule automatically permitting a search when the driver or an occupant of a car is arrested, is not applicable to the protective sweep situation at issue here. See *Gant*, 556 U.S. at 346-47, 173 L. Ed. 2d at 498, 129 S. Ct. at 1721 (distinguishing *Long*); *Gant*, 556 U.S. at 352, 173 L. Ed. 2d at 502, 129 S. Ct. at 1724 (Scalia, J., concurring) (clarifying that the holding in *Long* is undisturbed by *Gant*); *United States v. Vinton*, 594 F.3d 14, 24 n.3 (D.C. Cir. 2010) (distinguishing *Gant* in the case of a protective sweep search); *United States v. Griffin*, 589 F.3d 148, 154 n.8 (4th Cir. 2009) (accord).

I also disagree with the majority's determination that the State attempted to advance a new theory on appeal. The majority speculates that the State, when it moved the circuit court to reconsider the suppression of the revolver, tried to justify the car search by substituting a new, *Terry*-stop rationale for the rationale of a search incident to a lawful arrest. The record, however, establishes that the State timely argued the *Terry*-stop justification during the first hearing on defendant's motion to suppress. Specifically, after the evidence was heard, the State argued that although the officers' initial approach to defendant's car did not constitute a stop, the situation became a stop when the officers observed the plain-view bullet in the car, "ask[ed] everyone out of the [car] for their safety," and reasonably suspected that a gun could also be in the car. Furthermore, when the suppression hearing was continued on a later date, the State again argued

that the officers acted reasonably and legally upon seeing the plain-view bullet in the car by ordering everyone out of the car and searching for a gun because it was reasonable to believe the presence of ammunition indicated the presence of a gun.

The circuit court even acknowledged the State's *Terry*-stop rationale, finding that after the officers saw the plain-view bullet, they removed the occupants of the vehicle, handcuffed defendant and did "a *Terry* pat-down search" of defendant. In addition, at the final hearing before the circuit court, where defendant asked the court to reconsider its ruling that the bullets were lawfully seized, the State again argued that the seizure of the plain-view bullet was constitutional and that, "under *Terry*," the pat down of defendant and the seizure of the bullet in his pocket was also constitutional.

Although the circuit court erroneously presumed that the State's theory to justify the car search was based on the rationale of a search incident to a lawful arrest, the State has not forfeited the *Terry*-stop justification and is not bound by the circuit court's erroneous presumption on appeal. Furthermore, unlike the circuit court's factual findings, its presumption concerning the State's theory to justify the car search is not entitled to deference by this court. See *Sorenson*, 196 Ill. 2d at 431.